[No. D058907. Fourth Dist., Div. One. Feb. 17, 2012.]

THE PEOPLE, Plaintiff and Respondent, v.
JOSEPH MONROE LEAVEL, Defendant and Appellant.

824

■■■■■■■■■■■■

### Counsel

Gerald J. Miller, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, and Heidi T. Salerno, Deputy Attorney General, for Plaintiff and Respondent.

### Opinion

**McCONNELL, P. J.**—A jury found Joseph Monroe Leavel guilty of residential robbery (Pen. Code, § 211; count 2),[1] grand theft of a firearm (§ 487, subd. (d)(2); count 3), false imprisonment (§ 236; count 4), making criminal threats (§ 422; count 5), kidnapping to commit robbery (§ 209, subd. (b)(1); count 7), burglary (§ 459; count 8), and being a felon in possession of a firearm (former § 12021, subd. (a)(1);[2] count 10).[3] The jury rejected Leavel's plea of not guilty by reason of insanity. He admitted three prior convictions within the meaning of the "Three Strikes" law (§§ 1170.12, subds. (a)–(d), 667, subds. (b)–(i)), and the court denied his motion to strike them (§ 1385). The court sentenced Leavel to consecutive prison terms of 25 years to life on counts 2, 5, 7 and 10, and a one-year enhancement on each of two prior prison terms (§ 667.5, subd. (b)), for a total of 102 years to life. The court stayed consecutive sentences of 25 years to life on counts 3, 4 and 8.

On appeal, Leavel contends the trial court erred by not appointing a second mental health professional under section 1027 to examine him with respect to his insanity defense; denying his motion for a mistrial after a sheriff's deputy disclosed Leavel was living in a detention center when he was served with a search warrant for a DNA sample; and denying his motion to strike his prior strike convictions. He also challenges the sufficiency of the evidence to support the jury's verdict on the kidnapping for robbery count. We affirm the judgment.

### FACTUAL BACKGROUND

At 1:20 a.m. on July 22, 2005, 69-year-old Diann Panzera was in her home office.[4] She heard noises and went to the kitchen to investigate. An

---

[1] Further statutory references are also to the Penal Code unless otherwise specified.

[2] Former section 12021, subdivision (a)(1) is continued without substantive change in section 29800, subdivision (a)(1).

[3] The jury acquitted Leavel on counts for residential burglary and robbery in a separate incident.

[4] By the time of trial Panzera had died. Her videotaped conditional testimony was presented to the jury.

African-American man, later identified as Leavel, was squatting in front of the refrigerator. Leavel is six feet tall and weighed approximately 250 pounds. He wore jeans, but no shirt or shoes. He had entered through a window over the sink.

Panzera froze and then began backing away. Leavel threatened Panzera, "Don't scream or I'll kill you." He slapped his hand over her mouth, knocked her to the ground and landed on her, causing her to lose bowel control. Leavel said he would not rape or hurt Panzera if she cooperated with him. He got off of her and pulled her up. He hugged her and kissed her on the top of her head and began telling her about his "sad life." Panzera got $70 from her purse and gave it to Leavel, and "he started snooping around" and took her cell phone and cigarettes.

Leavel told Panzera, "We're going to smoke cigarettes." Holding onto her arm and the back of her neck, he led her down the hallway looking for her bedroom. As they walked, Leavel continued telling Panzera about his "sad life." Panzera was frightened and "in shock." Leavel found the bedroom, where they smoked the cigarettes. He wiped his fingerprints from an ashtray with a tissue, stating, "I watch all those shows."

After smoking, Leavel "started looking around and through things," and he removed a loaded pistol from a nightstand drawer. He put it back, telling Panzera "he didn't want to get caught with it." He changed his mind, however, and took the gun. Leavel ordered Panzera to disconnect her phones and promise not to call the police.

Leavel then said he was hungry. He grabbed Panzera by the back of the neck and forced her into the kitchen. She gave him ham and a bottle of beer from the refrigerator. He began eating the ham, but ordered her to go into the bathroom and flush it down the toilet because it was too salty and he had high blood pressure. Leavel then took Panzera into her office where he "snooped around" and took a digital camera, a pen, and a towel.

Leavel next grabbed Panzera by the back of her neck and forced her outside with him where he retrieved his clothing and shoes. He then forced her back inside into the living room, where he got dressed. After dressing, he asked Panzera to hug and kiss him, which she refused to do. Leavel called someone from her cell phone, identified himself as "Joe," and said, "I've got $50. Never mind how I got it. I earned it."

Leavel placed all the items he had stolen on a table and "went out to the garage and stood there." He came back inside, took all the items, and left the house at around 2:10 a.m. He threw the bottle of beer in the front yard. Panzera was afraid for her safety throughout the ordeal.

Shortly after robbing Panzera, Leavel went to the home of an acquaintance, Arlington Holloway, and said something to the effect of "[t]hey made me or they dared me to do it." Leavel pulled a gun from his pocket, along with a bunch of money, jewelry, and a cell phone that had "Super Granny D" on the screen. The screen of Panzera's cell phone displayed the words "Super Granny D." Holloway drove Leavel somewhere, and when he returned home Leavel phoned him several times. The records from Panzera's cell phone showed eight calls to Holloway's phone. Additionally, Panzera instantly identified Leavel from a photographic lineup.

In 2007 an analysis was performed on DNA samples taken from the beer bottle left in Panzera's yard and from Leavel. Leavel was identified as a possible contributor to the DNA on the bottle. Statistically, the odds of another contributor were one in 870,000 African-American males.

## DISCUSSION

### I

#### Section 1027

Leavel contends the court violated section 1027 by denying his request for the appointment of a second mental health professional to examine him and perform an evaluation for purposes of his insanity defense. Section 1027, subdivision (a) provides in part: "When a defendant pleads not guilty by reason of insanity the court must select and appoint two, and may select and appoint three, psychiatrists, or licensed psychologists . . . to examine the defendant and investigate his mental status."

In August 2005 Leavel pleaded not guilty. On August 24, 2007, Leavel, through his appointed counsel, William Figueroa, added a plea of not guilty by reason of insanity. The court appointed Joy Smith Clark, Ph.D., to examine Leavel's mental status, and continued the trial. Leavel did not request the appointment of a second mental health professional. Dr. Clark issued a report dated October 4, 2007, in which she found him sane during the commission of the crimes.

Trial finally began on March 9, 2010.[5] At that time, Leavel reentered an insanity plea and requested the appointment of one mental health professional

---

[5] The court granted the defense more than 15 continuances throughout the proceedings. Further, on several occasions the court questioned Leavel's competence to participate in the proceedings, appointed mental health professionals to evaluate him under section 1368, and suspended the proceedings. On each occasion the court ultimately found Leavel competent to stand trial and reinstated the proceedings.

to examine him. The court granted the request and appointed Allen Kilian, Ph.D. The court, however, noted that given Leavel's tardy request and time constraints of trial, Dr. Kilian might have insufficient time to render a report. The court also noted the case had been continued "ad nauseam," Leavel stated at trial call that he was ready to proceed, and the request for an appointment appeared to be an attempt to further delay trial. .

The following day, after checking its records, the court advised Leavel that in 2007 he had entered an insanity plea, and Dr. Clark was appointed and submitted a report. Attorney Figueroa responded, "Wow," presumably having forgotten the matter. The court questioned whether its appointment of another doctor was necessary in light of Dr. Clark's report, and Figueroa submitted on the matter. Figueroa stated, "I don't know that that new appointment would have been able to help us anyway, so—because the [insanity plea] was never withdrawn." The court asked, "[I]s it your request that we revoke that referral to that doctor given the time constraints?" and Figueroa responded, "Yes. Given the time constraints, Your Honor."

During the sanity phase of trial, Dr. Clark testified Leavel was sane during the commission of the crimes against Panzera. Dr. Clark explained, "he demonstrated very organized behavior. He told [Panzera] to be quiet, not to cause any noise so as not to cause any disruption, also trying to cover up any trace of him by fingerprints, wiping away fingerprints, and . . . evading."

■ We agree with the People that Leavel forfeited appellate review of the section 1027 issue. "It has been held that the appointment of alienists[6] is mandatory only if requested and that in the absence of a request the failure of the court to make such an appointment is not a ground for reversal." (*People v. Richardson* (1961) 192 Cal.App.2d 166, 171 [13 Cal.Rptr. 321]; see *People v. Wiley* (1931) 111 Cal.App. 622, 626 [295 P. 1075] ["The examination of an accused by alienists which are appointed by the court is . . . not a jurisdictional proceeding and may be waived."]; *People v. Norton* (1934) 138 Cal.App. 70, 72–73 [31 P.2d 809]; *People v. Woods* (1937) 19 Cal.App.2d 556, 559 [65 P.2d 940]; *People v. Pearson* (1940) 41 Cal.App.2d 614, 621–622 [107 P.2d 463], disapproved of on another ground in *In re Wright* (1967) 65 Cal.2d 650, 655 & fn. 3 [56 Cal.Rptr. 110, 422 P.2d 998].) Psychiatric examinations under section 1027 are not compelled by the court. Rather, they are " 'initiated at the behest of the defendant.' " (*Centeno v. Superior Court* (2004) 117 Cal.App.4th 30, 42 [11 Cal.Rptr.3d 533].) A defendant "cannot sit idly by and be heard to complain only after proceedings have been concluded

---

[6] Section 1027 originally referred to mental health examiners as "alienists." (Stats. 1929, ch. 385, § 1, p. 702.) In 1965 the statute was amended to substitute "psychiatrists" for "alienists" (Stats. 1965, ch. 568, § 1, p. 1894), and in 1978 the statute was amended to insert provisions relating to psychologists (Stats. 1978, ch. 391, § 2, p. 1242).

adversely as to him." (*In re Morales* (1974) 43 Cal.App.3d 243, 251–252 [117 Cal.Rptr. 645].) A contrary rule would be unfair to the trial court and the People, waste judicial resources, and cause needless delay.

In August 2007 Leavel agreed to the appointment of one psychologist. Between then and the commencement of trial in March 2010, he did not request a second examination under section 1027, even though Dr. Clark's report was unfavorable to him and he had the statutory right to an evaluation by a second examiner. (§ 1027, subd. (a).) At trial, attorney Figueroa again requested the appointment of only one examiner, and the court appointed Dr. Kilian. After the court pointed out the 2007 insanity plea, its appointment of Dr. Clark, and her submission of a report, which Figueroa had apparently forgotten, he *agreed* to the cancelation of the appointment of Dr. Kilian. Leavel cannot now complain of a section 1027 violation. Figueroa obviously intended to request the appointment of only one examiner, and he was satisfied when he was reminded the evaluation had already been done.

Leavel also asserts the court abused its discretion by not granting a continuance of trial to allow for a second section 1027 evaluation. He submits that the court's appointment of Dr. Kilian was illusory because there was insufficient time for an evaluation. The People point out that Leavel did not expressly request a continuance, but they concede that he "impliedly sought yet another continuance."

In any event, in criminal cases "[c]ontinuances shall be granted only upon a showing of good cause." (§ 1050, subd. (e).) A "showing of good cause requires that both counsel and the defendant demonstrate they have prepared for trial with due diligence." (*People v. Doolin* (2009) 45 Cal.4th 390, 450 [87 Cal.Rptr.3d 209, 198 P.3d 11].) "A reviewing court considers the circumstances of each case and the reasons presented for the request to determine whether a trial court's denial of a continuance was so arbitrary as to deny due process. [Citation.] Absent a showing of an abuse of discretion and prejudice, the trial court's denial does not warrant reversal." (*Ibid.*)[7] While Leavel attempts on appeal to establish good cause, he gave the trial court no explanation for his delay. Accordingly, he made no showing of diligent trial preparation or good cause for a continuance.

## II

### Motion for Mistrial

Kelly Craig, of the San Bernardino County Sheriff's Department, testified that in 2007 he "was asked to write a search warrant for a buccal swab,

---

[7] Leavel's suggestion that Dr. Clark's report was stale by the time of trial is incorrect as an examination under section 1027 is to assess the defendant's mental status during commission of the crimes. (*People v. Williams* (1988) 197 Cal.App.3d 1320, 1324 [243 Cal.Rptr. 480].)

controlled DNA swab," from Leavel. He said he "asked Detective Collins . . . to serve the search warrant for me at West Valley Detention Center."

The court called a recess and chastised the prosecutor for inquiring into "Leavel's custody status" and "the fact that he was on parole." The prosecutor explained he did not anticipate that Deputy Craig would reveal Leavel's whereabouts when the search warrant was served.

Leavel moved for a mistrial on the ground of prejudicial error. The court denied the motion, stating the parties could stipulate to the DNA swab having been taken from Leavel, and that the court would admonish the jury it was to disregard Deputy Craig's testimony. Leavel agreed to the stipulation without any further objection. The court advised the jurors, "[Y]ou are to disregard Deputy Craig's last answer," and counsel stipulated "that a [DNA] swab was taken from . . . Leavel properly."

■ "We review the denial of a motion for mistrial under the deferential abuse of discretion standard. [Citations.] 'A motion for mistrial is directed to the sound discretion of the trial court. . . . "[A] mistrial should be granted if the court is apprised of prejudice that it judges incurable by admonition or instruction. [Citation.] Whether a particular incident is incurably prejudicial is by its nature a speculative matter, and the trial court is vested with considerable discretion in ruling on mistrial motions." ' " (*People v. Cox* (2003) 30 Cal.4th 916, 953 [135 Cal.Rptr.2d 272, 70 P.3d 277], disapproved of on another point in *People v. Doolin, supra*, 45 Cal.4th at p. 421, fn. 22.)

■ We conclude the court acted within its discretion by denying Leavel's mistrial motion. The single reference to a detention center was easily cured by striking the evidence and admonishing the jury to disregard it. A presumption arises that the jury followed the court's admonishment (*People v. Letner and Tobin* (2010) 50 Cal.4th 99, 173 [112 Cal.Rptr.3d 746, 235 P.3d 62]), and Leavel has not rebutted the presumption. Further, the evidence against him is overwhelming. Panzera accurately described Leavel, she instantly identified him from a photographic lineup, he called his acquaintance Holloway eight times from the cell phone he stole from Panzera, and he was a possible contributor of the DNA found on the beer bottle he left in her front yard. "Had the error[] discussed herein not occurred, it is not within the realm of probability that defendant could have secured a more favorable result." (*People v. Morgan* (1978) 87 Cal.App.3d 59, 76 [150 Cal.Rptr. 712] (*Morgan*), disapproved of on another ground in *People v. Kimble* (1988) 44 Cal.3d 480, 496, fn. 12 [244 Cal.Rptr. 148, 749 P.2d 803].)

Leavel's reliance on *People v. Guerrero* (1976) 16 Cal.3d 719 [129 Cal.Rptr. 166, 548 P.2d 366] (*Guerrero*), is misplaced. In *Guerrero*, the

defendant was convicted of first degree murder of a teenage girl. The prosecution's theory was that the murder took place during the course of an attempted rape. (*Id.* at pp. 725–726.) The court admitted the testimony of another girl, Lopez, on issues of identity and intent, that the defendant had raped her six weeks before the alleged murder. (*Id.* at p. 723.) The court held the admission of the evidence was error, and the defendant was prejudiced "beyond a shadow of a doubt." (*Id.* at p. 730.) The court explained, "The Lopez rape was particularly brutal and abhorrent. No limiting instruction, however thoughtfully phrased or often repeated, could erase from the jurors' minds the picture of defendant's role in raping a 17-year-old girl and forcing her to commit oral copulation. 'The net effect to the jury was to paint a sign on [defendant] which said "rapist." ' [Citation.] Defendant had a right to be tried solely for the murder . . . . Instead, he found himself charged also with the rape of Miss Lopez." (*Id.* at p. 730.)

The facts of *Guerrero* are nothing like the instant facts. Here, there was only a single brief reference to a detention center. No evidence was adduced of the nature of any former crime or to any felony charge or conviction. Even if the jury gleaned from the detention center comment that in 2007 Leavel was on parole in another case, the jury had no particular reason to give the comment any weight.

*Morgan, supra,* 87 Cal.App.3d 59, is also unhelpful. In *Morgan,* the court held that evidence of prior crimes, including that the defendant had been in a halfway house and had a parole officer, was inadmissible (*id.* at pp. 65, 68, 70), but no prejudice was caused by its admission since the prosecution evidence "must be categorized as being almost overwhelming. In addition to defendant's identification by the victim, a watch belonging to the victim was found on defendant's person upon his arrest, and defendant produced for the police the victim's wallet which defendant had secreted after the robbery." (*Id.* at p. 76.) The evidence against Leavel is equally compelling.

Moreover, contrary to Leavel's suggestion, standing alone the court's excoriation of the prosecutor with regard to the mention of the detention center does not show prejudicial error. We review the court's ruling, not its reasoning. (*People v. Zapien* (1993) 4 Cal.4th 929, 976 [17 Cal.Rptr.2d 122, 846 P.2d 704].)

III

*Kidnapping for Robbery Count*

Additionally, Leavel challenges the sufficiency of the evidence to support his conviction of kidnapping for robbery. " ' "To determine the sufficiency of

the evidence to support a conviction, an appellate court reviews the entire record in the light most favorable to the prosecution to determine whether it contains evidence that is reasonably, credible, and of solid value, from which a rational trier of fact could find the defendant guilty beyond a reasonable doubt." ' [Citations.] ' " 'If circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also be reasonably reconciled with a contrary finding does not warrant a reversal of the judgment.' " ' " (*People v. Burney* (2009) 47 Cal.4th 203, 253 [97 Cal.Rptr.3d 348, 212 P.3d 639].)

■ "Any person who kidnaps or carries away any individual to commit robbery" is guilty of kidnapping for robbery. (§ 209, subd. (b)(1).) Subdivision (b) of section 209 "shall only apply if the movement of the victim is beyond that merely incidental to the commission of, and increases the risk of harm to the victim over and above that necessarily present in, the intended" robbery. (§ 209, subd. (b)(2); see *People v. Daniels* (1969) 71 Cal.2d 1119, 1139 [80 Cal.Rptr. 897, 459 P.2d 225] (*Daniels*) [opinion's holding codified in subd. (b)(2) of § 209].)

"The rationale for this requirement is that, given 'the breadth of the statutory definition of kidnapping, . . . it "could literally overrun several other crimes, notably robbery and rape, . . . since detention and sometimes confinement, against the will of the victim, frequently accompany these crimes. . . . It is a common occurrence in robbery, for example, that the victim be confined briefly at gunpoint or bound and detained, or moved into and left in another room or place." ' [Citation.] Our Supreme Court concluded that 'such incidental movements are not of the scope intended by the Legislature in prescribing the asportation element of the same crime.' " (*People v. Power* (2008) 159 Cal.App.4th 126, 137–138 [70 Cal.Rptr.3d 799], citing *Daniels, supra,* 71 Cal.2d at p. 1134.)

"With regard to the first prong, the jury considers the 'scope and nature' of the movement, which includes the actual distance a victim is moved. [Citations.] There is, however, no minimum distance a defendant must move a victim to satisfy the first prong." (*People v. Vines* (2011) 51 Cal.4th 830, 870 [124 Cal.Rptr.3d 830, 251 P.3d 943].) We also consider the "context of the environment in which the movement occurred." (*People v. Rayford* (1994) 9 Cal.4th 1, 12 [36 Cal.Rptr.2d 317, 884 P.2d 1369].) "This standard suggests a multifaceted, qualitative evaluation rather than a simple quantitative assessment." (*People v. Dominguez* (2006) 39 Cal.4th 1141, 1152 [47 Cal.Rptr.3d 575, 47 P.3d 866].)

The second prong " ' "includes consideration of such factors as the decreased likelihood of detection, the danger inherent in a victim's foreseeable

attempts to escape, and the attacker's enhanced opportunity to commit additional crimes. [Citations.] The fact that these dangers do not in fact materialize does not, of course, mean that the risk of harm was not increased." ' " (*People v. Vines, supra,* 51 Cal.4th at p. 870.) "In the vast majority of cases, the increased risk of harm to the victim is a risk of physical harm. However, this requirement can also be satisfied by a risk of mental, emotional, or psychological harm." (*People v. Power, supra,* 159 Cal.App.4th at p. 138, citing *People v. Nguyen* (2000) 22 Cal.4th 872, 874, 877–886 [95 Cal.Rptr.2d 178, 997 P.2d 493].)[8]

The two prongs "are not mutually exclusive but are interrelated." (*People v. Vines, supra,* 51 Cal.4th at p. 870.) Whether a victim's forced movement was merely incidental to the robbery "is necessarily connected to whether it substantially increased the risk to the victim." (*People v. Dominguez, supra,* 39 Cal.4th at p. 1152.) "[E]ach case must be considered in the context of the totality of its circumstances." (*Ibid.*)

Leavel contends the first prong is unsatisfied because his movement of Panzera around her own property was merely incidental to the robbery. He relies on *Daniels,* in which the court held that brief movements the defendants compelled their victims to make inside their homes were merely incidental to robbery and did not substantially increase the risk of harm otherwise present. (*Daniels, supra,* 71 Cal.2d at pp. 1123, 1124, 1140.) The opinion states: "Indeed, when in the course of a robbery a defendant does no more than move his victim around inside the premises in which he finds him [or her]—whether it be a residence, . . . or a place of business or other enclosure—his conduct *generally* will not be deemed to constitute the offense proscribed by section 209." (*Daniels, supra,* at p. 1140, italics added.) Indeed, "[m]ost movements that have been found to be insubstantial or merely incidental to the underlying crime have been within a building [citations], or within the premises of a business." (*People v. Power, supra,* 159 Cal.App.4th at p. 139.)

The facts here are distinguishable from those in *Daniels.* In *Daniels,* the defendants gained entry to the homes of three women. On one occasion, the defendants "walked [a victim] quickly through the dining room into the kitchen, a distance of approximately 18 feet," where they demanded cash. (*Daniels, supra,* 71 Cal.2d at p. 1123.) She told them to look in her purse, where she had no

---

[8] Leavel does not challenge the jury instruction on the kidnapping for robbery count. The jury was instructed that to convict it must find he intended to commit robbery; acting with that intent he "took, held, or detained [Panzera] by using force or by instilling a reasonable fear"; using that force he moved Panzera, or made her move, "a substantial distance"; Panzera "was moved or made to move a distance beyond that merely incidental" to the commission of the robbery; when the movement began Leavel already intended to commit robbery; Panzera did not consent to the movement; and he had no reasonable belief she consented.

cash. (*Ibid.*) On another occasion, a defendant demanded money from the victim, and she walked five or six feet to a table holding her purse and gave him cash. (*Id.* at p. 1124.) On another occasion, a defendant walked the victim "first towards the kitchen and then towards the bedroom to see if anyone was there. He then sat her down on the bed and asked her for money. The distance that the parties had covered was about 30 feet." (*Ibid.*)

Here, the evidence supports a finding that Leavel's forcible movement of Panzera from the kitchen to her bedroom was unnecessary to facilitate a robbery. He had already taken her cell phone and $70 in cash from her purse. The bedroom contained no safe she was required to open, and he did not ask her where any of her belongings were located. Rather, on his own accord he rifled through her nightstand drawer and found a loaded gun. It appears that Leavel sought Panzera's company in the bedroom, rather than her assistance, because on the way there he was relating his "sad story" to her and he insisted that she join him in smoking a cigarette.

"[A] movement unnecessary to a robbery is not incidental to it at all." (*People v. James* (2007) 148 Cal.App.4th 446, 455, fn. 6 [55 Cal.Rptr.3d 767]; see *People v. Corcoran* (2006) 143 Cal.App.4th 272, 279–280 [48 Cal.Rptr.3d 851].) "Lack of necessity is a sufficient basis to conclude a movement is not merely incidental . . . ." (*People v. James, supra,* at p. 455.)[9] In *Corcoran*, the court upheld an aggravated kidnapping conviction in which the victims were moved *after* an attempted robbery was aborted. The court concluded "the movement of the victims had nothing to do with facilitating taking cash from the [establishment]; defendant and his accomplice had aborted that aim, and their seclusion of the victims in the back office under threat of death was clearly 'excess and gratuitous.' " (*Corcoran, supra,* at pp. 279–280.)

Further, even if Leavel's forcible move of Panzera to the bedroom was in furtherance of the robbery, the jury could find his forcible move of her from the bedroom to the kitchen and other locations was not. Leavel was hungry and wanted food. After eating some ham, he ordered her into the bathroom to flush it down the toilet. He later physically forced her *outside the house* where he retrieved his clothes and shoes, and then he forced her *back into the house* and into the living room where he required her to watch him dress.[10]

---

[9] On the other hand, a "movement necessary to a robbery may or may not be merely incidental to it." (*People v. James, supra,* 148 Cal.App.4th at p. 455.)

[10] The People's respondent's brief erroneously states Leavel retrieved his clothes and shoes from the kitchen of Panzera's home. Panzera testified he retrieved the items "[f]rom the back where he came in the window." She was asked, "Now, did he leave the house to get the clothes?" and she responded, "He took me with him," and he did so "[b]y the back of the neck." In objecting to Leavel's motion for acquittal on the kidnapping for robbery count, the prosecutor

This is not a case of brief or slight movement naturally occurring in a robbery. The movement was excessive and gratuitous in that it was intended to control and dominate Panzera. Although reasonable minds may differ, the evidence amply supports a finding that at least some of Leavel's forcible movement of Panzera was not "merely incidental" to the commission of the robbery.

Substantial evidence also supports a finding that the forcible movements increased the risk of harm to Panzera. She was 69 years old when the ordeal occurred, and Leavel moved her around by grabbing her neck and arm. Most of the movements occurred when he was carrying her loaded gun. Panzera had disconnected the phones on Leavel's order and she was cooperative with him. He could have secured her in one spot in the home and left her alone while he searched the house and escaped with the loot. Leavel is six feet tall and he weighed about 250 pounds. He had no cause to manhandle Panzera to achieve his robbery objective. Further, forcing her outside in the dark increased the risk of harm to her from a possible escape attempt, and forcing her back inside decreased the possibility of detection, escape or rescue, and enhanced his opportunity to commit additional crimes against her. (*People v. Dominguez, supra*, 39 Cal.4th at p. 1143; *People v. Corcoran, supra*, 143 Cal.App.4th at p. 279.)

IV

*Prior Strike Convictions*

Leavel faults the court for not striking one or more of his prior strike convictions under *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 [53 Cal.Rptr.2d 789, 917 P.2d 628]. The Three Strikes law is intended to restrict courts' discretion in sentencing repeat offenders. (*People v. Carmony* (2004) 33 Cal.4th 367, 377 [14 Cal.Rptr.3d 880, 92 P.3d 369] (*Carmony*).) Section 1385, subdivision (a) allows the court to dismiss an action in the "furtherance of justice," and in *Romero* the court held the statute gives a court discretion to strike prior conviction allegations in cases brought under the Three Strikes law. (*Romero, supra*, at pp. 529–530.)

· In ruling on whether to strike a prior conviction allegation, "the court in question must consider whether, in light of the nature and circumstances of

---

represented to the court, "And on one incident, he even made her go outside with him so he could collect some of his clothing." During closing argument, the prosecutor stated, "There was also testimony that he took her outside, made her go outside with him so that he could get his clothes and some of the other items that he left outside." In his closing (and on appeal) Leavel ignored the forcible movements outside the house and back inside. In his rebuttal, the prosecutor reminded the jury that in addition to moving Panzera throughout the house, Leavel "walk[ed] her to the back yard so that he could get his clothing."

his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*People v. Williams* (1998) 17 Cal.4th 148, 161 [69 Cal.Rptr.2d 917, 948 P.2d 429].)

The court's ruling on a motion to strike is subject to a deferential abuse of discretion standard of review. (*Carmony, supra,* 33 Cal.4th at p. 376.) A "trial court will only abuse its discretion in failing to strike a prior felony conviction allegation in limited circumstances. For example, an abuse of discretion occurs where the trial court was not 'aware of its discretion' to dismiss [citation], or where the court considered impermissible factors in declining to dismiss." (*Id.* at p. 378.) The burden is on the party challenging the sentence to clearly show the sentence was irrational or arbitrary. (*Id.* at p. 376.) Further, a sentence will not be reversed merely because reasonable people might disagree. " ' "An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge." ' " (*People v. Superior Court (Alvarez)* (1997) 14 Cal.4th 968, 978 [60 Cal.Rptr.2d 93, 928 P.2d 1171].)

Leavel admitted prior robbery convictions (§ 211) in 1985 and 2000, and a burglary conviction (§ 459) in 1996. His motion to strike states that in 1985 he "robbed a customer at a Wendy's drive thru at knifepoint" and demanded $2. The motion claimed he was legally drunk at the time and he had not been taking his medication for "Manic/Depression." The motion does not describe the other two crimes, and merely states "the fact [Leavel] was not on his medication leads to unusual behavior which results in [him] committing seemingly violent acts. Unfortunately, this behavior is the result of [his] illness and his use of alcohol and other illegal substances."

Leavel has not shown extraordinary circumstances warranting reversal. The record shows the court was aware of its discretion under *Romero.* In refusing to strike a prior conviction it explained, "I will find that there's no good reason or the interest of justice will not be served by the actual striking of the priors." Additionally, the record does not suggest the court considered impermissible factors.

Leavel has a history of property crimes dating back to 1985, and he cites to no evidence pertaining to his work history, prospects for the future, or treatment for his mental health and substance abuse problems that he claims led to the crimes. (See *Carmony, supra,* 33 Cal.4th at p. 377.) In the portion of his briefing pertaining to this issue he cites only to allegations made in his motion to strike, which are not evidence. Further, Leavel's assertion that he

perpetrated the current offenses in a "relatively benign manner"—because he and Panzera smoked cigarettes together (on his order) and he stopped to eat some ham—is patently unmeritorious. He ignores that he threatened to kill her, slapped his hand over her mouth, threw her to the ground and landed on top of her with his full weight, and forcibly moved her around her property by the back of the neck, during an ordeal that lasted nearly an hour. "[I]n light of appellant's record and the facts of the present offense, imposition of the maximum term is well within the trial court's sentencing discretion." (*People v. Gutierrez* (1996) 48 Cal.App.4th 1894, 1896 [56 Cal.Rptr.2d 529].)

## DISPOSITION

The judgment is affirmed.

Benke, J., and O'Rourke, J., concurred.

Appellant's petition for review by the Supreme Court was denied May 9, 2012, S200987.