Filed 5/8/15  P. v. Duncantell CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

|  |  |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E061323 |
| v. | (Super.Ct.No. RIF10002270) |
| KENNETH LEE DUNCANTELL, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Edward D. Webster, Judge.  (Retired judge of the Riverside Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed.

Hilary Potashner, Acting Federal Public Defender, and Marta Vanlandingham, Deputy Federal Public Defender, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland and Stephanie H. Chow, Deputy Attorneys General, for Plaintiff and Respondent.

1

Defendant and appellant Kenneth Lee Duncantell appeals from a judgment resentencing him pursuant to Penal Code section 1170.126.[1] He argues that the trial court erred and/or abused its discretion by (1) resentencing him to the middle term for his current offense rather than the low term, and (2) striking only one of his prior "strike" convictions under section 667, subdivisions (b) through (e). We affirm the judgment.

STATEMENT OF THE CASE

On June 24, 2011, defendant was sentenced to an indeterminate term of 25 years to life following his convictions of possession of marijuana for sale (Health & Saf. Code, § 11359; count 2) and possession of drugs/contraband while incarcerated. (§ 4573.6; count 1.) Sentencing was stayed on five "prior prison term" enhancements. (§ 667.5.) The probation officer's report reflects that defendant was stopped by a corrections officer as he was " 'out of bounds' " in a dormitory other than that to which he was assigned at the California Rehabilitation Center. Five small bindles containing marijuana were found in defendant's sock. He tested positive for tetrahydrocannabinol (THC) at the time.

At the time of the offense defendant was serving a 10-year sentence for attempted robbery (§§ 664/211) of which he had been convicted in 2006.[2] The facts of that case

---

[1] All subsequent statutory references are to the Penal Code unless otherwise specified.

[2] The court imposed the middle term of two years for attempted robbery, doubled due to a prior "strike," and added a five-year enhancement under section 667, subdivision (a). Another year was added for one of the prior prison term enhancements found true (§ 667.5, subd. (b)), while enhancements for three other prison priors were stricken for purposes of punishment.

were that defendant and a co-perpetrator approached the victim as the latter was seated in her car after withdrawing money from an automated teller machine. One of the perpetrators opened the driver's side door, pointed a gun at the victim, and pulled the trigger several times but the gun did not fire. The victim put her vehicle in reverse and was able to drive away.

Following the enactment of section 1170.126, and well within the two years specified in subdivision (b) of that statute, defendant filed a petition for resentencing. He also filed a motion asking the court to exercise whatever discretion it had under *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497, 529-530 and to strike the " 'strike' " allegations in the underlying case pursuant to section 1385.

In connection with these requests, defendant submitted over 300 pages of documentation that focused generally on five points: his strong family support, his good behavior while in prison (at least during the current sentence), his ill health as an excuse for his marijuana use, minimization of the relevant offenses, and his abusive childhood. We briefly summarize each category.

First, medical records indicated that defendant is human immunodeficiency virus (HIV) positive and receiving regular treatment. He had sporadically been rated a significant suicide risk, although this was primarily related to his life term sentencing. A doctor who had reviewed his records gave the opinion that at the time of the marijuana offense, defendant was suffering from several painful conditions including gastrointestinal distress, peripheral sensory neuropathy, and headaches, all of which

3

might have been responsive to self-medication by cannabis. The doctor further noted that had defendant not been incarcerated, he could have legally obtained medical marijuana. This expert also felt that defendant's life expectancy was under 10 years.

Defendant's relatives, including his mother, two sisters, and an aunt, filed statements concerning his father's physical and sexual abuse of his children, reportedly including the molestation of defendant and repeated beatings.

Defendant's aunt and sisters were all willing to assist him on release. His mother also offered her own support and that of the Jehovah's Witness community in which she participates. A third half sister, also active in that community, confirmed the abuse and also offered support.

With respect to the robbery, defendant pointed to evidence that the gun used to threaten the witness might have been a toy. As suggested above, the evidence presented by defendant also supported the inferences either that he possessed the marijuana for his personal medical use or, if he was selling marijuana, he did so to finance his own medical use.

A former administrator with the California Department of Corrections and Rehabilitation (CDCR) reviewed defendant's prison "C-file" and noted positive comments by defendant's supervisor. For example, defendant was described as "treat[ing] everyone with the utmost respect," "always ready to lend a helping hand," and "an asset to the Main Kitchen Production Team." The administrator also noted that aside

4

from the marijuana incident, defendant's disciplinary history since 2006 was relatively benign, with the most serious infraction being an incident of mutual combat in 2006.[3]

In response, the People submitted a two-page letter memorandum directed at the prospective new sentencing, although they did not challenge defendant's eligibility under section 1170.126. This memorandum set out defendant's criminal history dating from 1985. Listed chronologically, this included robbery of an inhabited dwelling under former section 213.5; five subsequent parole violations; a misdemeanor violation of giving false identity to a police officer (§ 148.9); petty theft with a prior (former § 666); vehicle theft (Veh. Code, § 10851) in 1993 which resulted in a 16-month prison term; possession of a controlled substance (Health & Saf. Code, former § 11350) resulting in another prison term; battery (§ 242) leading to a violation of parole; another violation of parole; driving under the influence (Veh. Code, § 23152, subd. (a)); two more parole violations; possession of marijuana and a failure to appear (Health & Saf. Code, § 11357, subd. (b); Pen. Code, § 853.7); possession of marijuana for sale (Health & Saf. Code, former § 11359) and another prison term; another driving under the influence; obstructing an officer (§ 148, subd. (a)); another violation of parole; and the original offense of first degree robbery with a 10-year prison term. The memorandum also very briefly noted defendant's current offense and the fact that he had tested positive for marijuana twice *after* the incident leading to his most recent conviction.

---

[3] The report of this "expert" also blamed the CDCR for inadequate rehabilitative programs, with the result that defendant's perpetuation of his drug use was "predictable."

The court also had the benefit of the probation report from the most recent conviction specifically addressing factors in aggravation and mitigation, under California Rules of Court, rules 4.421 and 4.423 and included defendant's exculpatory version of both offenses and his report of his abused childhood. This report also included the information that defendant joined a street gang in 1984, which he left in 2001.

At the hearing, the trial court focused on defendant's past criminal history, including his abysmal performance on parole and his reported gang membership over a period of some 17 years. The court also expressed skepticism over defendant's claim that he needed to use marijuana, evaluating his medical care as appearing to be "excellent" and stressing the negative effects of contraband substances in the prison population. Accordingly, it rejected defendant's request to strike *both* his strikes, although it agreed to resentence him under section 1170.126 as a second striker. The trial court then selected the middle term of three years, doubled that term, and added two one-year prison priors (§ 667.5), declining to impose three other possible such terms. The eight-year term was ordered to be served consecutive to the robbery term, which defendant had not yet completed.

DISCUSSION

A.

Defendant's first argument is that the trial court should have selected the low term for the violation of section 4573.6. It is quite true that section 1170 no longer establishes the midterm as the presumptive sentence for an offense, and that the decision now rests

6

entirely within the discretion of the court. (See § 1170, subd. (b); *People v. Moberly* (2009) 176 Cal.App.4th 1191, 1196.) The court acts within its discretion so long as it does not rely on circumstances not relevant to the decision or which otherwise constitute an improper basis. (See *People v. Sandoval* (2007) 41 Cal.4th 825, 847-848.)

Here, the trial court relied on defendant's extensive criminal history and his unsatisfactory performance on parole—both expressly made appropriate factors by California Rules of Court, rule 4.423. It also relied on the dangers and undesirable consequences of available contraband in a prison setting—also undeniably an appropriate factor.

Defendant simply disagrees with the trial court, asserting that he "laid out firm arguments, supported by plentiful evidence, as to why he should receive a sentence of time served."[4] His claim rests in large part on his position that he only used marijuana to treat his pain and that this made his possession "partially excusable" within the meaning of California Rules of Court, rule 4.423. He ignores the fact that he was convicted not only of possession, but possession for sale, a far more serious matter.[5] He also ignores the fact that, other than some oblique self-serving comments, there was no evidence that

---

[4] Defendant presumably reaches this result by postulating a low term of two years to be served concurrently to his robbery term, and no enhancements. This also assumes that the trial court was obliged to strike *both* "strikes."

[5] Insofar as defendant argued, or argues, that his sale of marijuana was "justifiable" in order to obtain money to buy marijuana for his personal use, we simply reject the argument, as we would the argument that it would have been "justifiable" to steal money from another inmate for his own needs.

he could not obtain adequate pain relief on application to the medical system. Finally, he ignores the fact that he had multiple drug-related convictions with no apparent relationship to his medical issues, further undercutting his claim of necessity.

The fact that defendant's "expert" opined that he would not pose an unreasonable risk to the public was certainly not binding upon the trial court in its sentencing decision. Sentencing brings into play not only the protection of the public, but punishment—indeed, section 1170, subdivision (a)(1), now states flatly that "the purpose of imprisonment for crime is punishment." (See *People v. Evans* (2013) 215 Cal.App.4th 242, 252.) The trial court recognized that to grant all of the relief requested would be to impose no consequence whatsoever for the offenses of possession and possession for sale, a result which it found would be "irresponsible and inappropriate." We agree.

We also find that defendant overstates his prison record as "exemplary" and we decline to find that the trial court should have been more impressed that he had not been caught with a drug violation since 2010.[6] Although most of his prior convictions were not violent, they were repetitive and represent a virtually unbroken skein of antisocial behavior spanning over 20 years. Nor did defendant's unfortunate childhood mandate supine lenience at this stage of his life after his repeated failures to reform.

---

[6] Defendant's corrections expert also stated that "CDCR staff do not routinely submit laudatory chronos commending inmate behavior." Our review of scores, perhaps hundreds, of parole requests suggests that it is a sorry inmate indeed who cannot impress one or two corrections officers enough to obtain the prized "laudatory chrono."

This report also praised defendant for a series of clean tests. However, it also noted that defendant was placed on "Mandatory Drug Testing" only for the year following the subject incident, apparently terminating on July 25, 2011.

8

We agree that the trial court perhaps overstepped when it theorized that due to his lengthy gang involvement, defendant might have been involved in unreported criminal activity. However, this was not a major factor in its decision, and we do not fault its reliance on defendant's contribution to the potential risks created by available drugs in prison. And while defendant may be correct in arguing that the trial court should have accepted the statements of defendant's medical expert that cannabis was appropriate for his medical issues, the trial court did *not* err in refusing to conclude that his use of cannabis, illegally while incarcerated, was excusable.[7]

The trial court acted well within its discretion in imposing the middle term.

## B.

Defendant's attack on the refusal to strike his remaining prior under the authority of *People v. Superior Court (Romero), supra,* 13 Cal.4th 497 is similarly directed and fails for similar reasons. Given his long history of criminal conduct, including the serious offense of attempted robbery which formed the basis for his commitment at the time of the instant offense, there was no abuse of discretion in refusing to find that he fell outside the spirit of the three strikes scheme. (*People v. Leavel* (2012) 203 Cal.App.4th 823, 836-837.) Conversely, there was no basis on which to conclude that he had become

---

[7] Defendant also points out that the trial court made comments indicative of a belief that defendant may have brought his HIV infection on himself through use of tainted needles. However, as defendant concedes, the trial court recognized the impropriety of holding this against him. Again, this was at most a trivial factor.

9

"cleansed" of the taint of his most recent "strike" by a period of blameless living. (See

*People v. Humphrey* (1997) 58 Cal.App.4th 809, 813.)

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

HOLLENHORST
Acting P. J.

We concur:

MILLER
J.

CODRINGTON
J.

10