Filed 9/19/24

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>MARQUISHON HUGHEY<br>et al.,<br><br>    Defendants and Appellants. | 2d Crim. No. B325796<br>(Super. Ct. No. 2021019944)<br>(Ventura County) |

The offense of kidnapping involves moving a victim. To prove the offense of kidnapping to commit robbery, or to prove the offense of kidnapping to commit any other offense, the victim's movement must be shown to be more than incidental to the offense. Here, as we held in *People v. Aguilar* (2004) 120 Cal.App.4th 1044 and *People v. Shadden* (2001) 93 Cal.App.4th 164, the measure of "incidental" varies with the facts.

Marquishon Hughey and Dequon Dillard appeal judgments following their convictions of kidnapping in a court trial. (Pen. Code, § 207.)[1] They pled no contest to three counts of second

---

[1] All statutory references are to the Penal Code.

degree robbery.  (§ 211.)  Hughey and Dillard were each sentenced to an aggregate 12 years in state prison.  For each defendant the trial court imposed a two-year, out-on-bail enhancement.  (§ 12022.1, subd. (b).)

Substantial evidence supports the kidnapping convictions. We stay the two-year, out-on-bail enhancements and otherwise affirm.

*FACTS*

Abdul Razai was employed at the AT&T store in Camarillo, California.  He and two other store workers, Carlos Molina and Renan Lansang, the manager, were closing the store, pulling down the metal gates on the window and turning off the phones. Razai saw three people enter the store.  One of them, Damien Barron, ran toward him with a gun, followed by the two others, Hughey and Dillard.  He heard one of them say, "Put your hands up," and another one said, "[W]e want the phones."

The three employees followed the defendants' instructions and unlocked two doors leading to the back of the store.  The defendants told the employees to move to the back safe room area, and one said, "Open the safe."  When the employees entered the small safe room, Razai became more fearful.  The defendants were shouting different instructions and he did not know which instruction to follow.  He believed he was more likely to be injured in the safe room because it was a small area normally occupied by no more than two people.  He could not escape, and he felt if he made the wrong move, he would be shot.  He was given a bag and he followed the defendants' instructions about which phones they wanted him to take from the safe and put in the bag.  The defendants ordered the three employees to get on

2

the floor.  They then left the store.  As a result of the robbery, Razai suffered from post-traumatic stress disorder (PTSD).

Lansang testified the defendants shouted, "Get to the back."  He helped his coworkers put phones in the bags.  One of the defendants told him, "I'm going to Glock you down," meaning he would be shot "if [he] didn't follow orders."

Molina testified that he followed the defendants' instructions.  He told one of them, "I'm going to get the phones." But one of the defendants pressed a gun to his neck as he was "opening up the safe."

The distance from the front door of the store to the first locked door is 23 feet.  The distance from there to the second locked door is 15 1/2 feet.

The prosecutor claimed it was not necessary for the defendants to move all the employees to the back safe room to commit robbery.

The trial court found the defendants were not guilty of the greater charged offense of aggravated kidnapping (§ 209), but they were guilty of the lesser included offense of simple kidnapping.  (§ 207.)  The court said the defendants moved the victims "more than a trivial distance"; they caused the victims to be removed from public view; the "movement did increase the risk of physical or psychological harm" for the victims; and the employees "shouldn't have been subjected to it."

### DISCUSSION

### Substantial Evidence for Kidnapping

In reviewing the sufficiency of the evidence, we must draw all reasonable inferences from the record in support of the judgment.  (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206.)  We do not weigh the evidence, decide the credibility of the witnesses, or

resolve evidentiary conflicts. (*Ibid*.) Those are matters resolved exclusively by the trier of fact.

To prove kidnapping, the People must prove a person was unlawfully moved using physical force or fear, without their consent, and the movement was for a substantial distance. (§ 207; *People v. Hartland* (2020) 54 Cal.App.5th 71, 77.)

A defendant may be charged with robbery and kidnapping connected to that robbery. In such cases, for a conviction of kidnapping to commit robbery (§ 209), or the lesser included offense of simple kidnapping (§ 207), the People must prove movement that is more than what is "merely incidental" to commit robbery. (*People v. Waqa* (2023) 92 Cal.App.5th 565, 578; see also *People v. Vines* (2011) 51 Cal.4th 830, 871, overruled on other grounds in *People v. Hardy* (2018) 5 Cal.5th 56, 104; *People v. Martinez* (1999) 20 Cal.4th 225, 235, overruled on other grounds in *People v. Fontenot* (2019) 8 Cal.5th 57, 72.)

*Substantial Movement of the Victims*

In determining whether the movement is substantial, "the trier of fact may consider more than actual distance." (*People v. Martinez*, *supra,* 20 Cal.4th at p. 235.) The "totality of the circumstances" must be considered. (*Id*. at p. 237.) The movement may be substantial where it changed the victim's "environment" and "increased" the victim's "risk of harm." (*Id*. at p. 236.) It may be substantial where it "decreased the likelihood of detection" or increased the "danger inherent in a victim's foreseeable attempts to escape and the attacker's enhanced opportunity to commit additional crimes." (*Id*. at p. 237.)

Dillard notes that he only moved the victims "less than 40 feet to the safe room." But " 'no minimum distance is required to satisfy the asportation requirement' " and "the precise distance

4

need not be proven." (*People v. Waqa, supra*, 92 Cal.App.5th at p. 578.) A movement of a short distance may satisfy the asportation requirement where it places the victim in an environment where he or she is subject to a greater risk of harm. (*People v. Shadden, supra*, 93 Cal.App.4th at p. 170.)

Hughey and Dillard contend they cannot be convicted of kidnapping because their movement of the victims was necessary to commit the robbery. (*People v. Corcoran* (2006) 143 Cal.App.4th 272, 278.) A kidnapping conviction is not supported where the evidence shows " 'there was no excess or gratuitous movement of the victims over and above that necessary' " to commit the robbery. (*Id.* at p. 279.)

But courts have held the movement was not incidental to robbery and other crimes where the defendant moved the victim(s): 1) to a hidden area decreasing the "likelihood of detection" (*People v. Vines, supra*, 51 Cal.4th at p. 871); 2) to a back room hidden from public view increasing the risk of harm (*People v. Shadden, supra*, 93 Cal.App.4th at p. 170); 3) to an area near a porch light to a dark area (*People v. Aguilar, supra*, 120 Cal.App.4th at p. 1047); or 4) with a movement that "poses a substantial increase in the risk of psychological trauma to the victim beyond that to be expected from a stationary robbery" (*People v. Nguyen* (2000) 22 Cal.4th 872, 886).

Here the defendants caused the employees to be hidden from public view and increased the employees' risk of harm. In *Corcoran*, the defendants moved the victims into a back office at a bingo hall and threatened to shoot them if they left. The court held, "[T]heir seclusion of the victims in the back office under threat of death was clearly 'excess and gratuitous.' " (*People v. Corcoran, supra*, 143 Cal.App.4th at p. 280.) It served the

5

purpose of "removing the victims from public view, decreasing the odds that the attempted robbery of cash from the bingo hall would be detected, increasing the risk of harm should any victim attempt to flee, and facilitating the robbers' escape." (*Ibid*.) The court affirmed the kidnapping conviction.

A robber may move a victim to "one spot" to make it easier to search for items, leave, and escape "with the loot." (See, e.g., *People v. Leavel* (2012) 203 Cal.App.4th 823, 836.) Such a movement is incidental to the robbery if it was the minimum necessary to complete that crime. But where a robber "manhandle[s]" victims, increases their risk of harm or psychological trauma, those acts are not incidental to the robbery. (*Ibid*.; see also *People v. Nguyen*, *supra*, 22 Cal.4th at p. 886.) " '[A] movement unnecessary to a robbery is not incidental to it . . . .' " (*Leavel*, at p. 835.)

*People v. Hoard*

Hughey and Dillard rely on *People v. Hoard* (2002) 103 Cal.App.4th 599. In *Hoard*, the robber moved the employees to a back office and tied their ankles and wrists to commit a robbery at a jewelry store. The store was open. Customers tried to come in. The employees were not compliant. One tried to call police. The robber was not in complete control of the store. When customers arrived, he told them the store was closed for maintenance. The court held the movement of the employees to the back was necessary to commit the robbery and was thus "merely incidental" to it. (*Id*. at p. 607.) It "allowed him to conceal the robbery from any entering customers that might have thwarted him." (*Ibid*.) Because there was only one robber, he could not be at two places at the same time, and thus he could not

watch the employees in the back and be at the front taking the items.

The defendant in *Hoard* had to move all his victims to complete the robbery. That was not the case here. Where more than one victim is moved, the court may properly decide whether moving multiple victims was necessary to commit robbery. (*People v. Washington* (2005) 127 Cal.App.4th 290, 299 (*Washington*).)

Here the prosecutor noted the evidence showed it was not necessary to move the employees to the back to commit the robbery. The defendants were sophisticated and could have asked for the codes to unlock the security doors and the safes. The prosecutor alternatively claimed the defendants could have asked one employee to go back with them, "[T]hey didn't need to move [all] three." Molina testified he knew the codes. Lansang testified he also knew the codes to open the security doors and safes. He said he could have written down those codes which would have provided access to the security doors and all the safes. But the defendants did not ask him or any of the employees for the codes. They did not ask that only one person go with them, which would have allowed the other two employees to stay where they were.

Unlike *Hoard*, here there were three robbers, the employees complied with their orders, and the store was closed. One robber pulled the blinds down to prevent anyone from the outside from seeing inside. The defendants had complete control of the store, there was no threat of interference from arriving customers, and no need to move all the employees to the back as in *Hoard*. The trial court implicitly agreed with the prosecutor's position when it found the three employees "shouldn't have been

7

subjected" to this experience.  It could reasonably infer from Lansang's testimony that the defendants did not need to move all the employees to the back room to commit robbery because: 1) they "could have" obtained the door and safe codes from Lansang so that no employee had to be moved, or 2) they "could have" moved Lansang there so the other employees would not have to be moved.  (*People v. Salazar* (1995) 33 Cal.App.4th 341, 347.)

*Washington and Williams*

Hughey and Dillard cite *Washington*, *supra*, 127 Cal.App.4th 290, and claim it shows that moving all the employees to the back room was necessary to complete the robbery.  But in that case the court held "given that the cooperation of two bank employees was required to open the vault, the movement of both [the bank employees] *was necessary* to complete the robbery." (*Id.* at p. 299, italics added.)  Therefore, their movement was "incidental to the robbery." (*Ibid.*)

Hughey and Dillard cite *People v. Williams* (2017) 7 Cal.App.5th 644 (*Williams*).  *Williams* also involved a robbery at an AT&T store.  But, unlike the facts here, the defendants in *Williams* did not move all the employees to the back safe room.  They only required one employee to go there to open the safes containing the phones.  (*Id.* at p. 661.)  The court held, "None of the movements was unnecessary to the robbery." (*Id.* at p. 669.)

Here movement of more than one employee was not necessary.  Defendants' counsel argued defendants committed robbery by using the method they selected.  But the court is not bound by the defendants' modus operandi; it may consider whether they "could have" committed the offense without moving the victims.  (*People v. Salazar*, *supra*, 33 Cal.App.4th at p. 347.)  Hughey's and Dillard's reliance on *Hoard, Washington, and*

8

*Williams* is misplaced for another reason. Justice Ramirez's dissent in *Hoard* noted the majority ignored *People v. Nguyen, supra,* 22 Cal.4th 872, where a jury verdict found the robbers' conduct increased the risk of psychological trauma. The majority's conclusion that the robbers' conduct was necessary essentially condoned conduct the jury found to have increased the risk of psychological trauma. In *People v. Aguilar, supra,* 120 Cal.App.4th at page 1051, we agreed with Justice Ramirez's dissent in *Hoard* and concluded the *Hoard* majority "disregarded" the " 'context of the environment in which the movement occurred.' "

In *Williams, supra,* 7 Cal.App.5th 644 *and Washington, supra,* 127 Cal.App.4th 290, the appellate court concluded the robbers' conduct was necessary in the circumstances of the robbery. In *Williams,* the robbers 1) held a knife to a woman's neck, 2) physically assaulted a victim, and 3) made a death threat. In *Washington,* the robbers struck a compliant woman leaving a mark on her face and grabbed another woman by her hair and threw her to the floor.

These decisions condoned unnecessary violent conduct. Such conduct places victims at an "increased risk of harm." (*People v. Jones* (1999) 75 Cal.App.4th 616, 630.) The robbers may detain victims in one place and go to another to take items (*People v. Gomez* (2008) 43 Cal.4th 249, 258; *People v. Leavel, supra,* 203 Cal.App.4th at p. 836); but whenever they elect to move victims, they may face more serious consequences. Forced movement of victims that is not necessary to commit robbery increases their risk of harm, is not incidental to robbery, and supports a kidnapping conviction. (*People v. James* (2007) 148

9

Cal.App.4th 446, 457-458; see also *Leavel*, at p. 836; *People v. Corcoran, supra,* 143 Cal.App.4th at p. 280.)

*Conduct After Moving the Employees to the Back Room*

Here the employees complied with the defendants' instructions and were moved to the back. There the defendants had access to the open safes. But instead of simply taking the items from the safes and leaving the store (e.g., *Williams, supra,* 7 Cal.App.5th at p. 672), the defendants forced the employees to aid them in completing the robbery and to go through an unnecessary ordeal. The trial court found the employees "shouldn't have been subjected to it." This finding could reasonably apply to both the movement of all employees to the back room, as well as the defendants' conduct in that room.

After forcing the employees into the small vault room with its limited space, the defendants then ordered them to load the phones into bags. This was followed by an express death threat if the employees did not follow their orders. As the People note, the trial court could reasonably infer forcing the employees to perform in this do-or-die terror chamber environment was excessive, gratuitous, and not merely incidental to robbery given that the defendants could have simply taken the loot and avoided the trauma they caused. (*People v. Leavel, supra,* 203 Cal.App.4th at p. 835.)

Razai feared for his life because the defendants gave conflicting instructions. He felt he would be shot if he followed the wrong instruction and he suffered PTSD as a result of the robbery. The move to the safe room changed his environment and increased the risk of harm. (*People v. Shadden, supra,* 93 Cal.App.4th at p. 170.) The prosecutor said that in this part of the store the employees cannot get out; there is no exit. Razai

10

testified he was "more likely to be injured" in the safe room, as it was a small area for so many people to be cramped inside and there was no room to escape. Lansang fully cooperated, but he was told he would be shot if he did not comply with their instructions. As a result of this incident, he was on "Worker[s'] Comp." Conduct is not incidental to robbery where the defendant makes an unnecessary death threat causing psychological trauma to a victim. (*People v. Nguyen, supra*, 22 Cal.4th at p. 886; *People v. Hoard, supra*, 103 Cal.App.4th at p. 616.) Molina cooperated, but he had a gun placed on his neck as he was opening the safe.

The defendants "had no cause to manhandle" Molina "to achieve [their] robbery objective" (*People v. Leavel, supra*, 203 Cal.App.4th at p. 836); to seclude all "the victims in the back office under threat of death" (*People v. Corcoran, supra*, 143 Cal.App.4th at p. 280); and to subject all the employees to "an increased risk of harm [which] is consistently upheld where the defendant is armed during the movement of the victim." (*People v. Hoard, supra,* 103 Cal.App.4th at p. 615 (concur. and dis. opn. of Ramirez, J.); see also *In re Earley* (1975) 14 Cal.3d 122, 131.)

Increasing the risk of harm also includes unnecessary, forceful, or violent actions such as pushing "a gun into" a cooperating victim's "spine" (*People v. Simmons* (2015) 233 Cal.App.4th 1458, 1472), or subjecting the victim to "[b]eing jabbed with a gun" (*People v. Daniels* (1988) 202 Cal.App.3d 671, 683), which is the type of conduct to which Molina was subjected to.

As in *Corcoran*, the defendants' actions here involved "excess and gratuitous" conduct. The defendants "remov[ed] the victims from public view, decreasing the odds" the defendants

11

"would be detected," and increasing the "risk of harm" that the employees would be shot if they did not follow the conflicting instructions about removing items from the safes. (*People v. Corcoran, supra,* 143 Cal.App.4th at p. 280.) The court found video evidence showed one defendant "pulling the blinds down" so that "no one could see in [the store] from outside." It found, "[T]hat increases the risk of physical harm . . . ." It could also reasonably find the evidence showed "a substantial increase in the risk of psychological trauma." (*People v. Nguyen, supra,* 22 Cal.4th at p. 886.)

Defendants cite *People v. Hall* (Sept. 6, 2024, No. G062749) _ Cal.App.5th _ [2024 Cal.App. Lexis 550] where the Court of Appeal reversed a jury verdict of simple kidnapping in a home invasion robbery case. The majority found the movement of the victim up and down stairs in the home was not substantial. But the majority did not consider the victim's evidence of the increasing emotional harm the robbers caused and their gratuitous violent behavior of committing "multiple violent assaults," "pistol-whipping" the victim with a handgun, and "beating him" with the butt end of a rifle. (*Id.* at p. _ (dis. opn. of Moore, P.J.) [2024 Cal.App. Lexis 550 [p. 52].)

We agree with Justice Moore's dissenting opinion that noted the majority's analysis was incomplete. They did not understand that "in a simple kidnapping, the asportation element is a multi-factored test with several components." (*People v. Hall, supra,* _ Cal.App.5th at p. _ (dis. opn. of Moore, P.J.) [2024 Cal.App. Lexis 550 [p. 48].) The majority failed to consider a number of factors for simple kidnapping required by our Supreme Court, including that " 'the jury might properly consider [1] not only the actual distance the victim is moved, but

12

also such factors as [2] whether that movement increased the risk of harm above that which existed prior to the asportation, [3] decreased the likelihood of detection, and [4] increased both the danger inherent in a victim's foreseeable attempts to escape and [5] the attacker's enhanced opportunity to commit additional crimes.' " (*People v. Perkins* (2016) 5 Cal.App.5th 454, 465, citing *People v. Martinez* (1999) 20 Cal.4th 225, 237.)

*Inconsistent Findings*

Hughey and Dillard note the trial court made a remark about the movement of the victims and stated that it would not find "the *distance* was beyond that which was merely incidental." (Italics added.) They claim that statement undermines the judgments.

But the distance from the front of the store to the back room is not the dispositive factor for kidnapping. (*People v. Waqa, supra*, 92 Cal.App.5th at p. 578.) We held that movement of a victim over a much shorter distance is sufficient to support kidnapping. (*People v. Shadden, supra*, 93 Cal.App.4th at p. 170.) The environment the defendant creates within that distance is the critical factor. (*Ibid.*; see also *People v. Nguyen, supra*, 22 Cal.4th at p. 886; *People v. Aguilar, supra*, 120 Cal.App.4th at pp. 1050-1051.) In making their argument, Hughey and Dillard omit the court's findings concerning the environment they created for the victims. But even had they shown that this isolated remark was inconsistent with the judgment, the result would not change.

We consider the judgment and the findings the trial court made in entering that judgment. Here the court found the defendants were guilty of kidnapping and the People proved the elements of that crime. By doing so, the court necessarily found

13

the movement and environment the defendants created was not "merely incidental" to the crime of robbery. (*People v. Waqa, supra*, 92 Cal.App.5th at p. 578.) The express findings the court made also support that position. The court said the movement was "more than a slight or trivial distance"; the defendants removed the employees from public view; the movement "increased the risk of physical or psychological harm to the person *beyond that necessarily present in the robbery*"; and the employees "shouldn't have been subjected to it." (Italics added.) A movement is not incidental to robbery where it increases the risk of psychological harm for the victims. (*People v. Nguyen, supra*, 22 Cal.4th at p. 886.)

A trial court's remarks about an issue "may never be used to impeach the order or judgment." (*Burbank-Glendale-Pasadena Airport Authority v. Hensler* (1991) 233 Cal.App.3d 577, 591.) It is the ultimate judgment that is relevant, not the court's prior remarks. (*Ibid.*) A party may claim the court's prior statements were inconsistent with the judgment, but that will not overturn an otherwise valid judgment. (*Patarak v. Williams* (2001) 91 Cal.App.4th 826, 830.)

We have reviewed Hughey's and Dillard's remaining contentions and we conclude they have not shown grounds for reversal of the kidnapping convictions.

*Sentencing*

The trial court imposed a two-year, out-on-bail sentencing enhancement on each defendant. Section 12022.1, subdivision (b) provides, "Any person arrested for a secondary offense that was alleged to have been committed while that person was released from custody on a primary offense shall be subject to a penalty

14

enhancement of an additional two years, which shall be served consecutive to any other term imposed by the court."

Here the trial court found the defendants were out on bail from an offense charged in Tulare County. But to impose this enhancement there must be proof that the defendants were convicted of that Tulare offense. (*In re Jovan B.* (1993) 6 Cal.4th 801, 809.) The parties agree that there was no evidence showing a Tulare conviction. The court erred by imposing the two-year sentence.

## DISPOSITION

The two-year, out-on bail enhancements (§ 12022.1, subd. (b)) are stayed. (*In re Jovan B.*, *supra*, 6 Cal.4th at p. 809 ["the enhancement cannot be imposed unless the defendant is ultimately 'convicted' of both offenses"].) The clerk of the superior court shall correct the abstract of judgment to reflect this sentencing change and forward the amended abstract to the Department of Corrections and Rehabilitation. (*People v. Buycks* (2018) 5 Cal.5th 857, 893.) In all other respects, the judgments are affirmed.

<u>CERTIFIED FOR PUBLICATION.</u>

GILBERT, P. J.

We concur:

BALTODANO, J.

CODY, J.

15

Anthony J. Sabo, Judge

Superior Court County of Ventura

_____

Sydney Banach, under appointment by the Court of Appeal, for Defendant and Appellant Marquishon Hughey.

Mi Kim, under appointment by the Court of Appeal, for Defendant and Appellant Dequon Dillard.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Roberta L. Davis and Nikhil Cooper, Deputy Attorneys General, for Plaintiff and Respondent.