Filed 6/25/15  P. v. Grim CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>   Plaintiff and Respondent,<br><br>   v.<br><br>JOSEPH SENTELLE GRIM,<br><br>   Defendant and Appellant. | D067435<br><br><br>(Super. Ct. No. RIF1202291) |

APPEAL from a judgment of the Superior Court of Riverside County, Jean Pfeiffer Leonard and Edward D. Webster, Judges.  Affirmed.

Nancy L. Tetreault, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland, Robin Urbanski, and Amanda E. Casillas, Deputy Attorneys General, for Plaintiff and Respondent.

I.

INTRODUCTION

A jury found Joseph Sentelle Grim guilty of attempted robbery (Pen. Code, §§ 664, 211),[1] burglary (§ 459), and assault with a deadly weapon (§ 245, subd. (a)(1)). The jury also found that Grim personally used a deadly weapon, a knife, during the commission of the attempted robbery (§ 12022, subd. (b)(1)). After the jury rendered its verdicts, Grim admitted having suffered a prior serious felony conviction (§ 667, subd. (a)) and 10 prior strike convictions (§§ 667, subds. (c), (e)(2)(A), 1170.12, subd. (c)(2)(A)). The trial court sentenced Grim to an aggregate term of 30 years to life in prison.

On appeal, Grim claims that the trial court abused its discretion in denying his request for a continuance of the trial, permitting four witnesses to testify concerning his commission of four prior robberies, and refusing to dismiss any of his prior strikes at sentencing. We affirm the judgment.

---

[1]     All subsequent statutory references are to the Penal Code, unless otherwise specified.

FACTUAL AND PROCEDURAL BACKGROUND

A.      *The People's evidence*

        1.      *The events of September 11, 2009*

On the morning of September 11, 2009, Kristina Elmido was working as a sales clerk at a medical supply store in Moreno Valley.  Grim entered the store and Elmido greeted him.  Elmido had never met Grim before.

At the time Elmido noticed Grim, there was only one other person in the store, a customer.  While the other customer was looking at clothes, Grim asked Elmido to show him some equipment that was inside a glass showcase.  Elmido was standing on the other side of the showcase, near the cash register.  Elmido showed Grim the equipment and the two began talking.  According to Elmido, Grim was acting friendly and "slightly on the flirty side."

After the customer left, Grim went behind the showcase, pointed a knife within a couple of inches of Elmido's neck, and demanded that she give him money.  Elmido told Grim that she did not have any money and started to scream.  Elmido grabbed a nearby telephone.

Grim pushed Elmido to the ground, placed his hand over her mouth and nose, and told her to "shut up."  Elmido could not breathe, and she believed that Grim was trying to suffocate her.  Elmido scratched Grim's face and kneed him.  Elmido was able to briefly

get up from the ground, but Grim pushed her to the floor again and pinned her down. During the struggle, Grim fell into the glass showcase, which shattered. After falling into the showcase, Grim ran out of the store. Elmido called the police.

### 2. *The investigation*

Law enforcement officers arrived and collected blood and skin samples from underneath Elmido's fingernails. A criminalist determined that DNA found under Elmido's fingernails matched Grim's DNA profile.

### 3. *The prior robberies*

Four victims of four robberies that Grim committed in 1996 in Moreno Valley testified concerning the facts of those robberies. (See pt. III.B., *post*.)

### B. *The defense*

Grim testified in his own defense. Grim claimed that approximately three weeks prior to September 11, 2009, he had phone sex with Elmido through Live Links, a telephone dating service. Grim also claimed that approximately one week prior to September 11, he had a sexual encounter with Elmido at the medical supply store at which she worked.

Grim claimed that he returned to visit Elmido at the medical supply store on September 11. According to Grim, Elmido was initially happy to see him. However, Grim stated that Elmido's demeanor changed after he went next door to a nail salon and gave a female friend a hug and a kiss. Grim claimed that Elmido became upset and a

4

physical struggle ensued during which Elmido slapped him. Grim denied that he had a knife or that he attempted to rob or assault Elmido.

Grim admitted that in 1996 he was convicted of one count of attempted robbery and nine counts of robbery, and that during the commission of each of those crimes he used either a knife or a gun.

III.

DISCUSSION

A. *Grim has not established either that the trial court abused its discretion in denying his request for a continuance of the trial or that he suffered any prejudice from the denial of his request*

Grim contends that the trial court abused its discretion in denying his request for a continuance of the trial in order to allow him time to subpoena Elmido's telephone records, to corroborate his testimony that he knew her prior to the date of the charged offense.

1. *Factual and procedural background*

On April 26, 2013, Grim made an oral *Marsden*[2] motion. At a hearing on the motion, Grim stated, "I'm requesting a speedy trial, and I don't believe my attorney [Attorney Donath] here has the time to meet that time frame." Attorney Donath explained that he had three trials ahead of Grim's, and that he would be more available to attend to Grim's matter after the completion of the other trials. After confirming that there was not another court-appointed lawyer available to represent Grim, the trial court

---

[2]    (*People v. Marsden* (1970) 2 Cal.3d 118.)

5

denied the *Marsden* motion.  The court stated that although the delays were "frustrating," they did not rise to a level that would provide a basis for granting the motion.

On May 16, for reasons that do not appear in the record, Attorney Schwartz assumed Grim's representation.  That same day, the trial court set a trial date of May 24.  On May 22, Attorney Schwartz requested a "brief continuance."  In support of her request, Attorney Schwartz stated:

> "I am informed and believe based on my interview with defendant that there is material and relevant evidence that needs to be followed through on.  An investigator from my office has been retained to assist in this matter.  In order to effectively represent Mr. Grim I must have this investigation done prior to trial."

On May 24, the trial court granted the request for a continuance, and set the trial to begin on May 30.

On May 28, Attorney Schwartz filed a second request for a continuance.  In this request, Attorney Schwartz requested that the matter be continued to July 8th.  She explained the need for a continuance as follows:

> "I am informed and believed [*sic*] based on my interview with defendant that there is material and relevant evidence that needs to be followed through on.  . . .  In order to effectively represent Mr. Grim I must have this investigation done prior to trial.  [¶] . . . [¶] My investigator was retained and able to make progress toward trial however I must subpoena phone records in order to complete the investigation."

Attorney Schwartz also indicated that Grim was willing to give any time waiver necessary to accommodate the request.  In the alternative, Attorney Schwartz requested that the matter be assigned to a trial court on June 3.  Attorney Schwartz explained that

6

she had to attend a specially set preliminary hearing in another case on May 30, and that she would therefore be unavailable to proceed with Grim's trial on that date.

On May 30, the court, Judge Edward D. Webster, held a hearing in chambers with the prosecutor and Attorney Schwartz. Although the minute order does not provide Judge Webster's ruling on the motion for a continuance, it is clear that the court denied the request to continue the trial to July and granted Attorney Schwartz's alternative request to continue the matter to June 3, since the court set the matter for trial on that date.

Judge Jean Pfeiffer Leonard conducted the jury trial. On June 7, during the trial, outside the presence of the jury, Attorney Schwartz informed Judge Leonard that Judge Webster had denied her request for a continuance to permit her to subpoena telephone records to corroborate Mr. Grim's anticipated testimony to the effect that he knew the victim prior to the day of the charged offense.

After the trial concluded, Attorney Schwartz filed a certificate of probable cause in which she stated that the trial court had denied her request for a continuance so that she could have "additional time to subpoena phone records."[3] Attorney Schwartz stated that the phone records "would have substantiated [Grim's] claim that he had a prior relationship with the alleged victim who at trial claimed [Grim] was a 'stranger.' "

---

[3]    It is unclear why counsel filed a request for a certificate of probable cause, since no certificate was required in light of the fact that Grim was found guilty by a jury rather than by way of a plea.

2.    *Governing law*

In *People v. Fuiava* (2012) 53 Cal.4th 622, the Supreme Court outlined the law governing a trial court's ruling on a party's request for a continuance, and appellate review of such a ruling:

> " '[T]he decision whether or not to grant a continuance of a matter rests within the sound discretion of the trial court. [Citations.] The party challenging a ruling on a continuance bears the burden of establishing an abuse of discretion, and an order denying a continuance is seldom successfully attacked. [Citation.] [¶] Under this state law standard, discretion is abused only when the court exceeds the bounds of reason, all circumstances being considered. [Citations.] Moreover, the denial of a continuance may be so arbitrary as to deny due process. [Citation.] However, not every denial of a request for more time can be said to violate due process, even if the party seeking the continuance thereby fails to offer evidence. [Citation.]' [Citation.] '[T]he trial court may not exercise its discretion "so as to deprive the defendant or his attorney of a reasonable opportunity to prepare." [Citation.]' [Citation.]" (*Id*. at p. 650.)

" 'Absent a showing of an abuse of discretion and prejudice, the trial court's denial [of a request for a continuance] does not warrant reversal.' [Citation.]" (*People v. Leavel* (2012) 203 Cal.App.4th 823, 830.)

3.    *Application*

Grim's claim fails for several reasons. Most fundamentally, because Grim has not provided a reporter's transcript or a settled statement of the chambers hearing during which the trial court apparently denied Grim's request to continue the matter to July, we have no basis on which to review the grounds for the court's ruling. In the absence of a record, we cannot determine whether the court abused its wide discretion in ruling on the

8

request, and we must presume that the court's order is correct.  (See *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564 [" 'A judgment or order of the lower court is *presumed correct*' " (italics added)].)

Grim also has failed to demonstrate any prejudice from the denial of the continuance.  While Grim's counsel decided that she wanted to subpoena Elmido's telephone records no later than May 28 (when counsel filed her second motion to continue), the defense did not begin to present evidence until June 10.  Grim has made no showing that defense counsel attempted to subpoena Elmido's phone records during the two-week period between May 28 and June 10, or that this was an insufficient amount of time within which to subpoena the records.  In addition, while Grim contends that Elmido's telephone records would have corroborated his testimony, there is nothing in the record to support this assertion.[4]  Under these circumstances, Grim has failed to establish prejudice from the denial of his request for a continuance.  (See *People v. Barnett* (1998) 17 Cal.4th 1044, 1125 [concluding defendant did not establish prejudice from trial court's

---

[4]     As noted in part II.B., *ante*, Grim testified that he met Elmido through a phone dating service called Live Links.  In his appellate brief, Grim asserts "*Ms. Elmido admitted she used the internet dating service called Live Links in 2013.  . . .*  She claimed she did not use Live Links in 2009 [at the time of the charged offense]."  (Italics added.)
        However, the reporter's transcript does not substantiate Grim's claim that Elmido *ever* used Live Links.  The relevant portion of the transcript provides as follows:
        "[Grim's counsel]: And are you aware of Live Links?
        "[Elmido]: No.
        "[Grim's counsel]: Have you ever been involved in any Internet or phone dating?
        "[The prosecutor]: Objection.  Relevance.
        "The court: Overruled.
        "[Elmido]: Not at that time, but currently, yes."

denial of request to continue trial to permit testing to determine if substance contained any methamphetamine oil because "defendant has not cited any portion of the record showing that subsequent testing disclosed any methamphetamine oil," and reviewing court had "no basis for concluding . . . that the defense's proposed testing would have produced relevant evidence"].)

Accordingly, we conclude that Grim is not entitled to a reversal of the judgment on the ground that the trial court erred in denying his request for a continuance.

B.     *The trial court did not abuse its discretion in permitting four witnesses to testify concerning Grim's commission of four prior robberies*

Grim claims that the trial court erred in permitting four witnesses to testify concerning his commission of four prior robberies. The trial court permitted the witnesses to testify pursuant to Evidence Code section 1101, subdivision (b) in order to prove Grim's intent and the existence of a common plan or scheme to commit the robberies. Grim does not dispute the admissibility of this evidence under Evidence Code section 1101, subdivision (b), but contends that the trial court should have excluded the evidence pursuant to Evidence Code section 352 because the probative value of the evidence was substantially outweighed by the possibility of prejudice. We apply the abuse of discretion standard of review to Grim's claim. (See, e.g., *People v. Guerra* (2006) 37 Cal.4th 1067, 1113 [abuse of discretion standard of review applies to any ruling by a trial court on the admissibility of evidence and is particularly appropriate for questions regarding relevance and undue prejudice].)

10

1.    *Factual and procedural background*

Prior to the trial, the People filed a trial brief in which they requested permission to present evidence pursuant to Evidence Code section 1101, subdivision (b) that Grim had committed 10 prior robberies and two attempted robberies in 1996, in order to prove Grim's intent and the existence of a common plan or scheme to commit the robberies. The People described the facts of the prior robberies and noted that "eight [of the robberies] involved the use of a knife and were all similar in nature to the facts that occurred in this matter."

The trial court held a hearing on the People's request.  At the hearing, Grim objected to the introduction of the evidence pursuant to Evidence Code section 352. Grim argued that the prior robberies were remote in time and that it would be "highly prejudicial" to permit the jury to hear "the actual witnesses" to the prior crimes.  Grim also argued that the People should be precluded from offering any evidence of his commission of robberies in which he used a gun.  Grim argued that such crimes were dissimilar to the charged attempted robbery because the People alleged that Grim used a knife to commit the charged offense.

The prosecutor acknowledged that the "three [prior robberies] involving a gun are less similar, obviously, than the ones involving a knife, even though they have the same MO [modus operandi]-type beginning of them."  The prosecutor also acknowledged that "letting all 12 of them in would be—under [Evidence Code] section 352 . . . more

prejudicial than probative."  However, the prosecutor argued that it would be "fair for the jury to hear about . . . half of them."

>After further argument, the court ruled as follows:

>"It does appear that this evidence is probative.  It's also relevant. And the real issue is the [Evidence Code section] 352 issue.  So at this point, I'm going to allow you to bring in the priors involving [five different victims].  They all appear to be very similar to the current events.  They also all involve a knife.  And that would be five witnesses, and I do think that the probative value is not outweighed by undue consumption of time or undue prejudice. Obviously, bringing in 10 to 12 people is probably not going to be appropriate.  I think five is fair . . . to both sides.  It is what it is.  [¶] And on the other hand, [defense counsel] is right.  Parading in 12 people is going to put her in a very difficult position.  And so I think five would be enough. . . .  I will allow [the evidence concerning the prior robberies] in for intent and common plan or scheme."

Although the trial court permitted the People to present the testimony of five witnesses, only four actually testified at trial.  Each of the four witnesses, all female, testified to a separate robbery that Grim committed against them in 1996.  Each victim testified that the robbery occurred while she was working as a sales clerk or a cashier at a store in Moreno Valley.  According to the four victims, during each robbery, Grim produced a knife and demanded and obtained money from them.

2.      *Governing law*

In *People v. Jones* (2013) 57 Cal.4th 899, the California Supreme Court outlined the following well-established law governing the admissibility of evidence that the defendant has committed crimes other than those for which he is being tried:

" 'Evidence of the defendant's commission of a crime other than one for which the defendant is then being tried is not admissible to show bad character or predisposition to criminality but it may be admitted to prove some material fact at issue, such as motive or identity. (Evid. Code, § 1101.)  Because evidence of other crimes may be highly inflammatory, its admissibility should be scrutinized with great care.  [Citation.]'  [Citation.]  In cases in which the prosecution seeks to prove the defendant's identity as the perpetrator of the charged offense by evidence he had committed uncharged offenses, admissibility 'depends upon proof that the charged and uncharged offenses share distinctive common marks sufficient to raise an inference of identity.' "  [Citation.]  A somewhat lesser degree of similarity is required to show a common plan or scheme and still less similarity is required to show intent.  (*People v. Ewoldt* [(1994)] 7 Cal.4th 380, 402-403.)"  (*People v. Jones, supra,* at p. 929.)

Evidence Code section 352 provides:

"The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

" 'The "prejudice" referred to in Evidence Code section 352 applies to evidence which uniquely tends to evoke an emotional bias against the defendant as an individual and which has very little effect on the issues.' "  (*People v. Karis* (1988) 46 Cal.3d 612, 638.)

3.    *Application*

On appeal, Grim expressly acknowledges that evidence of his commission of the

prior robberies was relevant in proving his intent and a common design or plan.[5] However, he contends that the trial court abused its discretion in failing to exclude the evidence pursuant to Evidence Code section 352. In support of this contention, he argues that "[t]he sheer volume of the other crimes evidence created undue prejudice by confusing the jury into thinking [Grim] was on trial for five robberies rather than one attempted robbery." We see no possibility for such confusion. The trial court instructed the jury that it could consider the evidence of the uncharged crimes for the limited purpose of proving Grim's intent or that Grim had a plan or scheme to commit the charged offenses and "we presume the jury faithfully followed the court's limiting instruction." (*People v. Ervine* (2009) 47 Cal.4th 745, 776.)

Grim also contends that the jury's passions were inflamed through the presentation of the "emotional testimony of four additional female victims." We are not persuaded. The testimony of the four victims of the prior crimes was no more inflammatory than the testimony of the victim in the present case. Indeed, the evidence of the charged offense was more inflammatory than the evidence pertaining to the prior offenses in that Elmido testified that during the charged attempted robbery, she engaged in a physical struggle with Grim during which Grim placed his hand over her mouth and she feared that he was trying to suffocate her. In addition, the fact that the victims in the prior cases were all

---

5    In his brief, Grim states, "[a]ppellant does not dispute that his prior robberies were relevant in proving his intent," and "agrees that the prior robberies provided evidence of a common design or plan."

14

female was relevant in proving Grim's common manner of committing such robberies. In short, there was nothing uniquely inflammatory concerning the evidence of the prior robberies that required exclusion of the evidence pursuant to Evidence Code section 352. (See *Karis*, *supra*, 46 Cal.3d at p. 638.)

Finally, Grim contends that the evidence was "cumulative and unnecessary," and "consumed an undue amount of trial time." Again, we are not convinced. "Evidence is cumulative if it is repetitive of evidence already before the jury." (*People v. Evers* (1992) 10 Cal.App.4th 588, 599, fn. 4.) Each victim of the uncharged offenses testified to a different robbery and the testimonies were not particularly time consuming. In addition, the trial court limited the number of prior offenses as to which the People were allowed to present evidence.

Accordingly, we conclude that the trial court did not abuse its discretion in permitting four witnesses to testify concerning Grim's commission of four prior robberies.

C. *The trial court did not abuse its discretion in refusing to dismiss Grim's prior strike convictions*

Grim contends that the trial court abused its discretion in refusing to dismiss any of his prior strike convictions.

1. *Factual and procedural background*

Prior to trial, Grim filed a motion to dismiss 10 prior strike convictions in the interests of justice (§ 1385) and *People v. Superior Court (Romero)* (1996) 13 Cal.4th

497 (*Romero*). In a supporting brief, Grim contended that several factors supported dismissing the strikes, including the fact that his prior strikes were remote in time, and that he committed the underlying offenses during a crime spree while he was a juvenile. Grim also argued that "[a]fter the instant offense," he had "turned his life around." Among other accomplishments, Grim noted that, prior to his arrest for the current offense, he had been enrolled in college and was on the honor roll and that he served as a caretaker for several elderly individuals. Grim supported his motion with letters from numerous family members, friends, and acquaintances attesting to his good character, as well as evidence of his educational achievements.

The People filed an opposition in which they argued that the number of Grim's prior strike convictions combined with the fact that he had committed a serious and violent offense only seven months after completing a lengthy term in state prison demonstrated that the trial court should not dismiss any of the strikes. The trial court denied the motion.

As noted in part I., *ante*, after the jury returned its verdict finding Grim guilty of attempted robbery, burglary, and assault with a deadly weapon, Grim admitted having suffered 10 prior strike convictions (§§ 667, subds. (c) & (e)(2)(A), & 1170.12, subd. (c)(2)(A)) for 10 robbery convictions (§ 211).

Prior to sentencing, Grim refiled his *Romero* motion. At a hearing on the motion, the trial court heard argument from defense counsel and the prosecutor, as well as hearing

16

a personal statement from Grim.  The court then denied the motion.  In denying the

motion, the court reasoned in part:

> "I do think that my main guidance for this issue would be whether
> this particular defendant, based on background, character, prospects,
> and the nature of the crimes, falls within the spirit of the three strikes
> sentencing or not.  Unfortunately for Mr. Grim—I don't mean to be
> cavalier here—I think he's a poster child for the three strikes
> sentencing provisions.
>
> "There are just so many strikes, and . . . the fact that as soon as he
> gets out, within seven months he's back doing the same thing.  So
> based on that, I do not find anything mitigating about this case.  I
> don't find that his background or character or prospects would
> warrant me striking the strikes.  In fact, it appears to me that his
> criminal record is atrocious."

2.      *Governing law*

The law governing a trial court's consideration of whether to dismiss a prior strike

conviction is well established:

> "[T]he court in question must consider whether, in light of the nature
> and circumstances of his present felonies and prior serious and/or
> violent felony convictions, and the particulars of his background,
> character, and prospects, the defendant may be deemed outside the
> scheme's spirit, in whole or in part, and hence should be treated as
> though he had not previously been convicted of one or more serious
> and/or violent felonies."  (*People v. Williams* (1998) 17 Cal.4th 148,
> 161 (*Williams*).)

In *People v. Leavel* (2012) 203 Cal.App.4th 823, 837, this court summarized the

standard of review to be applied in reviewing a trial court's ruling on a motion to dismiss

a prior strike conviction:

> "The court's ruling on a motion to strike is subject to a deferential
> abuse of discretion standard of review.  [Citation.]  A 'trial court will

17

only abuse its discretion in failing to strike a prior felony conviction allegation in limited circumstances. For example, an abuse of discretion occurs where the trial court was not "aware of its discretion" to dismiss [citation], or where the court considered impermissible factors in declining to dismiss.' [Citation.] The burden is on the party challenging the sentence to clearly show the sentence was irrational or arbitrary. [Citation.] Further, a sentence will not be reversed merely because reasonable people might disagree. ' " 'An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge.' " ' [Citation.]"

3.  *Application*

Grim contends that the trial court abused its discretion in failing to dismiss "some or all" of his prior strikes. In support of this contention, Grim argues that the fact that his prior convictions all arose from a "single crime spree" when he was 16 years of age combined with the strong evidence of his rehabilitation supported dismissing the strikes. Notwithstanding the presence of these mitigating factors, in light of Grim's numerous prior strike convictions—10 robberies committed with either a knife or a gun—and his commission of an attempted robbery with a knife shortly after being released from a lengthy prison sentence, the trial court clearly did not abuse its discretion in denying Grim's *Romero* motion.[6]

---

[6]   Grim also contends that the court should have considered the impact of its alleged error in denying his request for a trial continuance in ruling on his *Romero* motion. Purported trial error is not an appropriate factor for a trial court to consider in ruling on a *Romero* motion. (See *Williams*, *supra*, 17 Cal.4th at p. 161 [listing the factors that a trial court is to consider in ruling on a *Romero* motion and noting that in *Romero* the court implied that "no weight whatsoever may be given to factors extrinsic to the scheme"].)

IV.

DISPOSITION

The judgment is affirmed.

                                                  _____

                                                        AARON, J.

WE CONCUR:

_____

        NARES, Acting P. J.

_____

        HALLER, J.