Filed 1/19/16  P. v. Rodriguez CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>ORLANDO RODRIGUEZ,<br><br>        Defendant and Appellant. | A143416<br><br>(San Mateo County<br>Super. Ct. No. SC075263A,<br>SC076373A) |

Appellant was convicted of assaulting his girlfriend on one occasion, and a year later, violating a stay-away order pertaining to the same person.  He challenges his convictions based on a response by the girlfriend's mother to a particular question asked by the prosecutor during his jury trial.  The judge sustained the defense objection and admonished the jury several times to not consider the answer.  The court properly denied a mistrial motion by defense counsel.  We have reviewed the record and find no error and therefore affirm the conviction.

**STATEMENT OF THE CASE**

On February 29, 2012, and then on August 23, 2012, the District Attorney of San Mateo County filed separate informations, case Nos. SC075263 and SC076373.  The trial court consolidated the two informations on November 30, 2012.

On December 12, 2012, the district attorney filed an amended information charging appellant with infliction of corporal injury within seven years of three prior

qualifying convictions (Pen. Code, § 273.5, subd. (a) & former subd. (e), now subd. (f)[1] (count 1)) and alleged an enhancement for having committed the offense while on bail and probation ineligibility based on having committed two prior felony offenses (§§ 12022.1, 273.5, 1203, subd. (e)(4)); misdemeanor violation of a stay-away protective order (§ 166, subd. (c)(1)) (count 2); and misdemeanor battery on a cohabitant (§ 243, subd. (e)(1)) (count 3).

On December 17, 2012, the jury found appellant guilty of all charges. On December 18, 2012, the trial court found true the alleged prior convictions and bail enhancement allegation.

On October 17, 2014, the trial court sentenced appellant to a term of 16 months consecutive to an 13-year term imposed for the offenses pending when appellant committed these offenses.

On October 27, 2014, appellant filed his timely notice of appeal.

## STATEMENT OF FACTS

### A. The July 8, 2011 Incident.

At trial, victim Amanda Sanchez was deemed unavailable and the district attorney was permitted to use the transcript from the preliminary hearing occurring on February 16, 2012, concerning the attack on July 8, 2011. The transcript was admitted pursuant to Evidence Code section 1291.

Amanda Sanchez had been dating appellant for approximately four years. Sanchez stated she had been living with appellant for approximately one year on this date and she had a child who was 20 months old. On the night of July 7, 2011, Sanchez had gone out with her girlfriends after work. Appellant was entrusted with the care of the infant while she was out. Sanchez arrived home around 11:00 p.m. When she entered, Sanchez was irritated appellant had asked her to return sooner than she wanted. The

---

[1] Unless otherwise stated, all statutory references are to the Penal Code.

2

couple began to argue, triggering crying from the infant and awakening the neighbors. The neighbors indicated they heard Sanchez scream several times during the confrontation and also noted banging on the walls.

At the end of the fight, appellant left the apartment. Sanchez waited for a while until she was certain he was not returning. Around 12:55 a.m., she called police to report the matter. Sanchez advised the police appellant punched her in the face and threw her to the floor several times.

Officer Keller was one of the police responders. He noticed an abrasion on her forehead and a laceration on the neck. Her face manifested redness consistent with punches to the area and Sanchez had recent carpet burns on her elbows and chest, suggestive of a struggle on the floor of the apartment. The victim also showed a large bruise on her hip. Photos were taken of her injuries. At the end of the interview, Sanchez asked for and received an emergency protective order from the officers.

Around 11:00 a.m. that morning, Sanchez called police to tell them appellant had returned to the apartment and was taking a shower. Officer Basurto came to the residence and found appellant in the bathroom. Basurto also noticed Sanchez's facial injuries. When Basurto saw appellant in the bathroom, Rodriguez was shirtless and exhibited no injuries at all. The officer arrested appellant based on the midnight incident and served him with a copy of the protective order. A few days after appellant's arrest, the police came to the apartment and photographed the injuries to Sanchez. Her left eye was considerably darker in color and bruising on her leg was evident.

During her testimony at the preliminary examination, Sanchez conceded she and appellant had scuffled that night, but she stated she was the aggressor and her injuries depicted in the photos arose as appellant tried to defend himself. Nevertheless, the magistrate held appellant to answer for the incident and issued a stay-away order precluding appellant from coming within 100 yards of Sanchez.

3

At the trial of the consolidated matters, appellant testified regarding the July 2011 incident. He contended Sanchez was the aggressor and he acted only in self-defense.

**B. The July 16, 2012 Incident.**

On July 16, 2012, one year after the charged domestic violence matter and six months after the issuance of the stay-away order by the magistrate at the end of the preliminary examination, appellant returned to the Sanchez apartment. During this time, Amanda's mother, Sandra Sanchez, was present in the home visiting her daughter and grandchild. Appellant came to the home around midnight and began banging on the front door. Sandra Sanchez suspected appellant had arrived because she had heard his motorcycle outside on the street.

Amanda answered the pounding by appellant at the door but she would not allow him inside the unit. Sandra Sanchez noticed appellant appeared inebriated and was very hostile. He insisted on entering the apartment. He demanded that Sandra Sanchez leave the home. He eventually tried to push his way into the unit. This behavior terrified Sandra Sanchez and she closed the children's bedroom door, grabbed her phone, and locked herself in the bathroom. She also called 911. The police quickly responded; however, appellant had already left.

A few hours later, the police found appellant on a public street. He maintained he had left his own home because he was asked to leave after having a fight with his current wife and her uncle.

Regarding the incident on July 16, 2012, at trial, appellant testified he was not at the Sanchez apartment. He claimed he had been home that evening with his wife and her uncle. He therefore did not violate any stay-away order.

At the start of the trial of these matters, counsel stipulated appellant had sustained two prior domestic violence-related convictions in the County of San Mateo and that Amanda Sanchez was not the victim in either incident.

4

## DISCUSSION

At the outset, we observe the trial in this matter concerned two separate incidents occurring a year apart. The state prison sentence imposed here was for the act of domestic violence happening in July 2011. In that matter, the jury relied on the preliminary hearing transcript and police officer testimony. Amanda Sanchez provided no testimony at trial on the incident. The jury rejected appellant's contention he was acting in self-defense when his girlfriend sustained the several blows depicted in the photographs and observed by the police.

During the portion of the trial regarding the violation of a stay-away order, Sandra Sanchez stated her "belief" that while she was in the locked bathroom making a 911 call, appellant choked her daughter, Amanda. Counsel for appellant objected. The trial judge sustained the objection and told the jury to disregard the statement. A mistrial motion was denied. This is the sole challenge presented here on appeal.

The witness, Sandra Sanchez, was relating the events on July 16, 2012. She was asked by the prosecutor:

"[Q]: And as far as you know did [Amanda] have any injuries as a result of the pushing that had gone on at the front door if you know?

"[A]: Other than he was choking her while I was in the bedroom.

"[DEFENSE COUNSEL]: Objection.

"[THE COURT]: No. Only testify to what you saw, not what you think might have happened.

"[WITNESS]: Okay.

"[THE COURT]: Please disregard the answer. It is not to be considered. There's no evidence to that effect.

"[PROSECUTOR]: Did you see any injuries on your daughter at all?

"[WITNESS]: No."

5

The defense then asked but two questions of Sandra Sanchez, when the trial for the day concluded. The defense then moved for a mistrial out of the jury's presence. The defense stated: "[E]vidence that was not going to come in came in through hearsay. That was something that the witness did not see but the jury has now heard. And that will greatly affect the ability to defend on Count 1." The trial judge denied the motion for mistrial. Both defense counsel and the court agreed the *question* by the district attorney to Sandra Sanchez was a proper question. The issue was the answer by the witness. The court then stated the issue was "whether the curative comment by myself is sufficient to solve this problem which admittedly is an improper statement by the witness." The court then stated: "[A]t this point I'm going to deny the motion. If I think differently after a few hours reflection. At this point it happened quickly. It was dealt with quickly. It was one comment, not several, or extreme, or an extended one. It was one quick sentence. I believe it is cured. I promise I will think about it some more, but at this point, I deny the motion, the mistrial motion."

The following day, again outside the presence of the jury, the judge again reaffirmed his prior conclusion on the mistrial. He advised defense counsel that "I'll leave it to you whether you wish me to say anything more to the jury or not. That's your choice." Defense counsel requested the jury be instructed on the blurted remark. In satisfying this application, the court told the jury at the start that morning: "Before we commence with the next witness I want to reiterate at the end of the day yesterday a statement was made by the last witness which I told you you were to disregard. I want to repeat there is no evidence to what was said by that witness at all. It is not part of this case. You are to assume it didn't happen. And I mean I just have to trust that you are able to just set that aside. It is not part of this case in the least. So with that in mind we'll proceed."

At the lunch break, defense counsel renewed his mistrial motion. He claimed the court should have advised the jury the choking remark was not true. Answering the

6

contention, the prosecutor advised the court and counsel the choking statement could have been true because it was based on the victim's statements to police—a person who was unavailable—and the statements were only inadmissible because of that fact. The court acknowledged the arguments by defense counsel and the rebuttal by the district attorney. It concluded the ruling on the mistrial would not be changed.

We review the denial of a motion for mistrial under the deferential abuse of discretion standard. (*People v. Cox* (2003) 30 Cal.4th 916, 953 (*Cox*); *People v. Price* (1991) 1 Cal.4th 324, 428.) A mistrial should be granted if the court is apprised of prejudice that it judges *incurable* by admonition or instruction. "Whether a particular incident is incurably prejudicial is by its nature a speculative matter, and the trial court is vested with considerable discretion in ruling on mistrial motions." (*People v. Jenkins* (2000) 22 Cal.4th 900, 985–986.)

In *People v. Leavel* (2012) 203 Cal.App.4th 823, a witness from the San Bernardino County Sheriff's Department testified on direct examination he was asked to obtain a swab of defendant's DNA. He indicated he obtained the item with a search warrant from the accused while he was housed at the "West Valley Detention Center." The trial court ordered a recess and questioned the prosecutor regarding the deputy's answer identifying the custodial status of the defendant. The district attorney advised the court he did not anticipate the reference to the custodial facility being disclosed. The court denied the mistrial motion by defense counsel. The court did tell the jury they were to disregard the reference by the deputy sheriff. There was no evidence the jury did consider the stricken answer in any way in the record. (*Id*. at pp. 830–831.)

The Court of Appeal noted: "[T]he [trial] court acted within its discretion by denying Leavel's mistrial motion. The single reference to a detention center was easily cured by striking the evidence and admonishing the jury to disregard it. A presumption arises that the jury followed the court's admonishment [citation], and Leavel has not rebutted the presumption." (*People v. Leavel*, *supra*, 203 Cal.App.4th at p. 831.)

7

Here we are also dealing with a single remark by a witness. The court immediately advised the jury to disregard the volunteered statement and repeated this admonition the very next day before the beginning of the trial. Additionally, the statement was given by a lay witness whose answer went beyond the actual question by the prosecutor. The record does not support any complicity by the district attorney in what the witness stated. There was no " 'intentional' " effort to " 'elicit inadmissible testimony.' " (*Cox, supra*, 30 Cal.4th at p. 952; *People v. Bonin* (1988) 46 Cal.3d 659, 689.) It is also true this trial judge gave several specific and unambiguous admonitions to the jury on the heels of the volunteered statement to disregard the improper remark. This is generally sufficient to address the issue. (*People v. Pitts* (1990) 223 Cal.App.3d 606, 692.) The general rule is that jurors are presumed to have followed the court's instructions on the law and evidence. (*People v. Sanchez* (2001) 26 Cal.4th 834, 852.) Appellant has not demonstrated any basis to disregard these principles.

It is also the case that any error here is evaluated under *People v. Watson* (1956) 46 Cal.2d 818, 836. While appellant contends the error violates due process and is of federal constitutional dimension, the fact remains any error in the receipt of evidence in a criminal trial is subject to the *Watson* standard of prejudice. (*People v. Gamache* (2010) 48 Cal.4th 347, 376.)[2]

Appellant contended at the trial he was not present at the apartment when Sandra Sanchez related the incident challenged here. His uncorroborated defense was alibi. He did not violate the stay-away in any fashion, let alone touch Amanda Sanchez, because he was not present. The jury could elect to believe the testimony of Sandra Sanchez and the 911 tape on the July 2012 incident. Also, appellant was not found at his home but instead was arrested on the street. As to the effect of the remark on the July 2011 battery,

_____

[2] If we assume the error was one of federal constitutional dimension, we would find it harmless beyond a reasonable doubt. It would not satisfy the standard of *Chapman v. California* (1967) 386 U.S. 18, 24.

8

appellant contended he was the victim of Amanda Sanchez's aggression.  Yet the jury had the photos and evaluated the locations of her physical bruising.  They also had the testimony of several police officers and the observation by Officer Basurto, who saw appellant shirtless and without any evidence of physical trauma.

In summary, the trial court properly exercised its discretion when it denied the mistrial motion.  A lone blurted remark by a lay witness promptly cured by the trial court on successive days of the trial was enough to correct any contrary spin by appellant here.

## CONCLUSION

Finding no merit to the challenge, we affirm the judgment in this case.

_____
DONDERO, J.

We concur:


_____
MARGULIES, Acting P.J.


_____
BANKE, J.

A143416

10