Filed 6/16/16  P. v. Talbott CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>KENNETH TALBOTT,<br><br>    Defendant and Appellant. | B262869<br><br>(Los Angeles County<br>Super. Ct. No. NA099983) |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Gary J. Ferrari, Judge.  Affirmed.

A. William Bartz, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Paul M. Roadarmel, Jr. and Daniel C. Chang, Deputy Attorneys General, for Plaintiff and Respondent.

_____

After a jury found defendant Kenneth Talbott guilty of assault with a deadly weapon, he admitted suffering two prior convictions alleged as enhancements pursuant to the Three Strikes law.[1]  On appeal, he contends:  (1) he was denied the right to present a complete defense by the ruling allowing the victim, called as a defense witness, to invoke his Fifth Amendment privilege against self-incrimination and (2) it was an abuse of discretion to deny defendant's *Romero* motion to dismiss one of the two Three Strikes priors in the interests of justice.[2]  We affirm.

## PROCEDURAL BACKGROUND

Defendant was charged by amended information with assault with a deadly weapon (§ 245, subd. (a)(1)).  Sentence enhancements for a 1983 conviction for forcible rape and a 1999 conviction for voluntary manslaughter were alleged pursuant to the Three Strikes law, section 667, subdivision (a)(1), and section 667.5, subdivision (b).  A jury found defendant guilty of the substantive offense.  Defendant subsequently admitted the prior conviction allegations.

After denying defendant's motion for new trial and *Romero* motion to dismiss the 1983 Three Strikes prior, the trial court sentenced defendant to a total of 30 years to life in prison, comprised of 25 years to life pursuant to the Three Strikes law, plus a consecutive 5 years pursuant to section 667, subdivision (a)(1).  The trial court struck the section 667.5, subdivision (b) enhancement.  Defendant timely appealed.

## FACTS

A.    *The People's Case*

Viewed in accordance with the usual rules on appeal (*People v. Zamudio* (2008) 43 Cal.4th 327, 357), the evidence established that at about 1:30 p.m. on August 15, 2014, defendant and victim Gregory Powell were arguing in the street in front of the

---

[1]    See Penal Code section 667, subdivisions (b) through (j) and section 1170.12 (the Three Strikes law).  All future undesignated statutory references are to the Penal Code.

[2]    *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 (*Romero*).

Willow Shopping Center, a strip mall located on the south east corner of Willow Street and Baltic Avenue in Long Beach.[3] Defendant produced what looked like a knife, which he thrust towards Powell. Powell backed away. Holding the weapon at chest level, defendant chased Powell. Several witnesses heard defendant say, "I'm going to kill you." When a marked police car arrived, defendant walked into a liquor store in the mall. Defendant was still in the liquor store when he was detained a few minutes later. The parties stipulated that the liquor store had surveillance cameras, a police officer viewed a recording taken by those surveillance cameras during the relevant time period, but the store owner inadvertently erased the recording when she tried to copy it for the police. The police officer who viewed the recording before it was erased testified as to what he saw: defendant entered the store, walked past the counter and to the refrigerator section in the back of the store; on his way to the back of the store, defendant took a "sharp object" out of the waistband of his pants and put it in a basket on a display case. After defendant was detained and taken out of the store, police searched the store for a weapon. An officer found a pair of scissors that "looked like a knife" in a basket near the refrigerators at the back of the store. The overall length of the scissors was 10 inches; the blade was four inches.

Four friends on their way to a restaurant in the strip mall – Brianna H., Christian I., Edgar O. and Isabel C. – witnessed the incident. Brianna recalled she was getting out of Christian's truck, which he had parked in the mall parking lot, when she heard a woman screaming for help. Looking around, Brianna saw defendant and Powell on the street, fighting. Defendant pulled out what looked like a knife and tried to stab Powell in the chest while he chased Powell around a parked truck. Defendant said "I'm going to kill you," while pointing the knife at Powell. Brianna told Edgar to call 911. At the instruction of the emergency operator, Brianna and her friends went into the restaurant and locked the door. From inside the restaurant, Brianna heard the woman still

---

[3] The appellate record includes a diagram of the mall, drawn by defendant and attached to a postverdict letter to the trial court asking for sentencing leniency.

3

screaming. Brianna saw defendant try to hide the "knife" in some boxes near the donut store, then enter the liquor store.

Edgar's account was generally consistent with Brianna's. In addition to hearing defendant say, "I'm going to kill you," Edgar heard defendant and Powell swearing at one another. Christian's account was consistent with both Brianna's and Edgar's in all material respects.

Isabel's testimony differed slightly. She recalled she and her friends were already inside the pizza restaurant when her attention was drawn to the front window by someone saying, "Oh, look what's going on outside." Through the window, Isabel saw defendant holding what looked like a knife and arguing with Powell, but she did not recall seeing defendant chase Powell around the parking lot trying to stab him.

B.   *The Defense's Case*

Defendant did not testify. To establish that he acted in self-defense, defendant sought to introduce victim Powell's testimony that he (Powell) was the initial aggressor in the altercation with defendant that day. But Powell's appointed counsel informed the trial court that Powell would be asserting his privilege against self-incrimination. Under oath, but outside the jury's presence, Powell confirmed he would assert the privilege to questions regarding whether, on August 15, 2014, Powell knew defendant, had a confrontation with defendant, punched defendant in the head and dropped a large pair of scissors.[4] The trial court sustained Powell's assertion of the privilege; it noted that Powell "has a pending case in this court."

The parties stipulated: (1) on August 15, 2014, victim Powell was six feet, one inch tall and weighed 190 pounds; (2) Defense Exhibit A was a photograph of Powell

---

[4]   These questions were apparently based on a police officer's preliminary hearing testimony that Powell had told the officer that he (Powell) was walking away from defendant after an argument; but when Powell saw defendant reaching in his waistband for what Powell believed was a weapon, Powell punched defendant; after Powell punched him, defendant produced a knife and chased Powell around the parking lot, trying to stab him.

4

taken the day of the incident; Defense Exhibit B was defendant's booking photograph taken that same day; (3) Powell complained of pain to his right hand and wrist; he was treated by the Long Beach Fire Department but was not transported to the hospital.

C.       *Closing Statements*

In his opening statement, defense counsel told the jury that Powell would testify that defendant produced the knife only after Powell hit him. But after Powell did not testify, defense counsel argued in his closing statement that the police investigation was flawed because they did not check whether any of the stores in the mall had security cameras that recorded Powell "slugging" defendant in the head. Defense counsel argued that defendant appears to have a swollen head in his booking photograph taken the day of the incident. And in the photograph of Powell taken that same day, Powell appears to have a "cast or bandage on his right hand. . . . I guess we can speculate he hit something or hit somebody."[5]

The prosecutor countered that defense counsel's argument was nothing more than "an invitation for you to speculate" and to ignore the eyewitness evidence.

## DISCUSSION

A.       *Powell's Assertion of His Privilege Against Self-Incrimination*

Defendant contends he was denied the constitutional right to present a complete defense by the trial court's acceptance of Powell's invocation of his Fifth Amendment privilege to not incriminate himself. He argues allowing Powell to assert the privilege was error because there was no showing that Powell had reasonable cause to fear he would be incriminated by his answers to defendant's questions. We disagree.

1.       Standard of review

The Fifth Amendment privilege against self-incrimination is codified in Evidence Code section 940, which reads: "To the extent that such privilege exists under the Constitution of the United States or the State of California, a person has a privilege to refuse to disclose any matter that may tend to incriminate him." The burden is on the

---

[5]       The exhibits are not included in the record on appeal.

5

person claiming the privilege to show that the proffered evidence "might tend to incriminate him; and the proffered evidence is inadmissible unless it clearly appears to the court that the proffered evidence cannot possibly have a tendency to incriminate the person claiming the privilege." (Evid. Code, § 404.)

We independently review the trial court's ruling on a witness's assertion of the privilege against self-incrimination. (*People v. Seijas* (2005) 36 Cal.4th 291, 304 (*Seijas*).)

2.      Forfeiture

The People argue defendant forfeited the right to challenge the ruling allowing Powell to assert his privilege against self-incrimination. They argue defendant objected in the trial court only on the ground that Powell was allowed to assert the privilege outside the presence of the jury, not on the ground that Powell had no reasonable cause to fear self-incrimination.

A defendant "who fails to object to a court's permitting a witness to assert the privilege against self-incrimination may not challenge the ruling on appeal. [Citations.] This bar 'is but an application of the general rule that questions relating to the admissibility of evidence will not be reviewed on appeal in the absence of a specific and timely objection in the trial court on the ground sought to be urged on appeal. (See Evid. Code, § 353 . . . .)' [Citation.]" (*Seijas, supra*, 36 Cal.4th at p. 301.)

Here, defendant did not object to permitting Powell to assert the privilege; he objected only to allowing Powell to do so outside the presence of the jury. Thus, defendant forfeited any challenge to the ruling allowing Powell to assert the privilege on the ground that there was no showing of reasonable cause to fear incrimination. As we shall explain, even if the issue was not forfeited, defendant's contention fails on its merits.

3.      Applicable legal principals

A criminal defendant's constitutional right to due process is violated when the state proceeds in a manner that renders a trial fundamentally unfair. (*People v. Rivas* (2013) 214 Cal.App.4th 1410, 1422.) A criminal defendant's right to call witnesses on

6

his own behalf is essential to due process. (*Chambers v. Mississippi* (1973) 410 U.S. 284, 302.) But "the right to confront and to cross-examine is not absolute and may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process." (*Id*. at p. 295.) A criminal defendant's right to call a witness may bow to that witness's privilege against self-incrimination. (*Seijas, supra*, 36 Cal.4th 291.)

For a witness in a criminal trial to invoke the privilege, the witness must demonstrate that answering the defendant's questions would have a tendency to incriminate the witness. The *Seijas* court explained: "A witness may assert the privilege who has 'reasonable cause to apprehend danger from a direct answer.' [Citations.] However, 'The witness is not exonerated from answering merely because he declares that in so doing he would incriminate himself—his say-so does not of itself establish the hazard of incrimination.' [Citation.] . . . 'To sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result.' [Citation.] To deny an assertion of the privilege, 'the judge must be " 'perfectly clear, from a careful consideration of all the circumstances in the case, that the witness is mistaken, and that the answer[s] cannot possibly have such tendency' to incriminate." ' [Citations.]" (*Id*. at pp. 304-305.)

As we shall explain, witness Powell met his Evidence Code section 404 burden in this case.

### 4. Analysis

Powell and his counsel could reasonably believe that the testimony defendant sought to elicit from Powell – that defendant and Powell were arguing when Powell punched defendant in the side of the head; Powell punched defendant before defendant threatened Powell with a weapon; Powell dropped a large pair of scissors and it was this pair of scissors that defendant picked up and pointed at Powell after Powell punched him – would have tended to incriminate Powell of committing an assault and battery against defendant. (See §§ 240, 242 & 243.) The reasonableness of Powell's belief in the

incriminatory nature of the proffered testimony is further demonstrated by the trial court's comment that Powell "has a pending case in this court."

On this record, we cannot conclude " ' " 'from a careful consideration of all the circumstances in the case, that the witness is mistaken, and that the answer[s] cannot possibly have such tendency' to incriminate." ' [Citations.]" (*Seijas, supra*, 36 Cal.4th at pp. 304-305.) Accordingly, the trial court did not err in sustaining Powell's assertion of his privilege against self-incrimination.

B.     *Denial of Defendant's* Romero *Motion*

Defendant contends it was an abuse of discretion to deny his *Romero* motion seeking to strike the 1983 conviction for forcible rape for purposes of Three Strikes law sentencing. He argues that, although he "had numerous arrests and convictions, except for the [rape and manslaughter convictions underlying the Three Strikes allegations] the rest of his criminal history consists of misdemeanor and infraction arrests and or convictions." We find no error.

"In ruling on whether to strike a prior conviction allegation, 'the court in question must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies.' [Citation.]" (*People v. Leavel* (2012) 203 Cal.App.4th 823, 836-837.)

We review the trial court's ruling for abuse of discretion. A " 'trial court will only abuse its discretion in failing to strike a prior felony conviction allegation in limited circumstances. For example, an abuse of discretion occurs where the trial court was not "aware of its discretion" to dismiss [citation], or where the court considered impermissible factors in declining to dismiss.' [Citation.] The burden is on the party challenging the sentence to clearly show the sentence was irrational or arbitrary. [Citation.] Further, a sentence will not be reversed merely because reasonable people might disagree. ' "An appellate tribunal is neither authorized nor warranted in

8

substituting its judgment for the judgment of the trial judge." ' " [Citation.]" (*Leavel, supra*, 203 Cal.App.4th at p. 837.) Defendant has not met this burden.

Defendant was 49 years old when the incident occurred in August 2014 (he was 50 years old by the time of the sentencing hearing in March 2015). He admitted two prior convictions: (1) a forcible rape conviction in 1983, when he was 19 years old and (2) a voluntary manslaughter conviction in 1999, when he was 35 years old. In support of his *Romero* motion regarding the 1983 prior conviction, defendant argued the current offense was not gang related, there was no premeditation and, except for the strikes, none of his prior convictions were for violent crimes. The trial court was dubious of defendant's characterization of his recidivism as non-violent: "THE COURT: . . . You have driving under the influence, you have a misdemeanor carrying a loaded firearm, a [section] 273, subdivision (a), vandalism, [section] 242, battery while on probation. . . . [¶] We have the 1999 case, the manslaughter wherein he was sentenced to 10 years in state prison, he probably did about half of that. When he was released on parole, there were multiple D.U.I.'s, which I don't consider inconsequential in any manner, way or form. We have a parole violation, for whatever reason. [¶] It's just been a continuous series of arrests; some serious, some not so serious. But the ones that were serious were heinous crimes. Rape. Does it get worse than that? Manslaughter, stabbing somebody to death? These are serious, serious crimes and your client has been in and out of jail for the last 30-some odd years."[6]

The trial court denied the motion to strike, observing, "This is not the kind of individual with that type of record that I'm inclined to strike these strikes."

We find no abuse of discretion in the trial court's ruling. The trial court was clearly aware of its discretion to strike priors alleged as strikes. Defendant has not identified any impermissible factors the trial court considered in exercising that discretion. Although the 1983 rape conviction was 32 years old, defendant's three decades of recidivism (including substantial time spent in prison on the manslaughter

---

[6] The trial court stated it was not considering prior arrests that did not lead to convictions.

9

conviction) supports the trial court's conclusion that defendant falls within the spirit of the Three Strikes law.  On this record, defendant has failed to show the order denying his *Romero* motion was irrational or arbitrary.

## DISPOSITION

The judgment is affirmed.


                                        RUBIN, ACTING P. J.

WE CONCUR:


        FLIER, J.


        GRIMES, J.