Filed 10/29/25  P. v. Blajos CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>RUBEN BLAJOS,<br><br>    Defendant and Appellant. | B340429<br><br>(Los Angeles County<br>Super. Ct. No. VA078054) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Maria A. Davalos, Judge.  Affirmed.

John Schneider, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Scott A. Taryle and Sophia A. Lecky, Deputy Attorneys General, for Plaintiff and Respondent.

———————————————

After a jury convicted Ruben Blajos of first degree burglary, a trial court sentenced him to 25 years to life under the "Three Strikes" law (three strikes law) and imposed one- and five-year terms under Penal Code[1] sections 667.5, subdivision (b) and 667, subdivision (a)(1). Thereafter, at a resentencing hearing under section 1172.75, the trial court struck the one- and five-year terms but denied Blajos's *Romero*[2] motion to strike a prior serious felony conviction. Blajos appeals, contending that the trial court abused its discretion by denying his *Romero* motion. We disagree and affirm the judgment.

## BACKGROUND

I.    Evidence at Blajos's trial for burglary

The background is from the appellate opinion affirming Blajos's judgment of conviction on direct appeal, *People v. Blajos* (July 27, 2005, B175115) [nonpub. opn.].

On August 14, 2003, Cynthia Lagunas left her duplex in Hawaiian Gardens at approximately 9:00 a.m. Later, a witness saw Blajos trying to enter Lagunas's duplex through a window. Sheriff's deputies arrived, and a deputy saw Blajos poke his head out of a bathroom window. Deputies advised over a loudspeaker that a police dog would be deployed and anyone in the building should surrender. When Blajos did not exit the residence, deputies and a police dog entered it, the dog alerted toward the attic, and deputies released tear gas into the duplex. The dog

---

[1]    All further undesignated statutory references are to the Penal Code.

[2]    *People v. Superior Court (Romero)* 13 Cal.4th 497 (*Romero*).

2

went to the attic, where he discovered and bit Blajos, who surrendered.  (*People v. Blajos*, *supra*, B175115.)

The duplex had been ransacked.  The bedroom dresser drawers had been pulled out and clothing removed.  Lagunas's jewelry had been removed from a box in a dresser drawer and left in the kitchen in a handbag.  A small purse containing approximately $1,000 that had been hidden on a shelf in a bedroom closet was on the floor between the living room and bedroom.  A deputy who was present when Blajos exited the attic did not see any signs Blajos was intoxicated.  (*People v. Blajos*, *supra*, B175115.)

In his defense, Blajos testified that he knew the duplex's prior residents but did not know they no longer lived there.  On the day of the incident, he had been drinking, taken several valium pills, and was kind of high.  Because he was on parole, he panicked when he saw a deputy.  He entered the duplex by climbing onto the dresser, and then he passed out.  Blajos denied ransacking the duplex or looking for jewelry and money.  (*People v. Blajos*, *supra*, B175115.)

II.    Verdict and sentence

In 2004, a jury convicted Blajos of first degree burglary (§ 459).  That same year, a court sentenced him.  After a court trial on prior conviction allegations, the court found that Blajos had two prior strike convictions, both for first degree burglary, one committed in 1987 and the second in 1991.  The court also found that Blajos had a prior conviction for possession of a controlled substance (Health & Saf. Code, § 11377, subd. (a)) within the meaning of section 667.5, subdivision (b).  After denying Blajos's motion to strike one of the strike convictions, the court sentenced Blajos to 25 years to life and 2 five-year terms

3

under section 667, subdivision (a)(1).  The court also imposed but stayed a one-year term under section 667.5, subdivision (b).

III.    Postconviction proceedings

In 2022, the Department of Corrections and Rehabilitation (the department) notified the trial court that Blajos was eligible for resentencing under section 1172.75.  The trial court set a hearing and received briefing in which Blajos asked the trial court to strike the one-year term imposed under section 667.5, subdivision (b), and the five-year terms imposed under section 667, subdivision (a).  At the hearing, the trial court stated it had considered, among other things, a report from resentencing expert Lisa LaPorta and a "Core Men's v.4 Needs Assessment."

A.    *LaPorta's resentencing report*

Blajos was born in 1955.  He served in the military and was honorably discharged.  He began using heroin in 1984 and has struggled with substance abuse since, including overdosing in 2019.  However, Blajos has successfully completed Narcotics Anonymous, Alternatives to Domestic Aggression and Violence, Criminal and Addictive Thinking, Alcoholics Anonymous, and Relapse Prevention Creative Conflict Resolution and Anger Management classes or workshops. Blajos has also volunteered to raise money for various causes, taken education classes, and had positive work performance reviews.

Blajos had four nonviolent rules violations over the past five years and numerous counseling chronos for, among others, refusing to report, stealing food, disobeying a direct order, failure to stand for count, and delaying lockup.  LaPorta therefore found it "evident" that Blajos "has had difficulty following rules and respecting authority."  He had serious rules violations in 2019 for

4

possessing morphine and drug paraphernalia and in 2020 for possessing alcohol.

Blajos was a gang member, but no recent gang activity was noted in his file.

In 2022 and 2023, his classification score was level one based on his discipline-free periods and positive work performance. His static risk assessment was low, and his criminogenic needs factors were high for substance abuse and family support but low for criminal personality, anger, and educational and employment problems. Per the correctional offender management profiling for alternative sanctions, he was considered low risk for reoffending.

LaPorta referred to Dr. Trombley's December 2019 risk assessment, which indicated that Blajos had moderate risk factors for violent recidivism based on his long history of substance abuse and criminal behavior. But he has been violence-free for 20 years, and his aggression has decreased.

Forensic psychologist Dr. Mellnay prepared a comprehensive risk assessment for a January 2023 parole board hearing. It stated that Blajos had a long history of rule breaking, impulsivity, irresponsibility, and repeatedly violating other's rights "and violence." His behavior met the criteria for antisocial personality disorder. The doctor found that Blajos represented a moderate (medium) risk for violence. "He presents an elevated risk relative to long term parolees and non-elevated or below average risk relative to shorter-term parolees released without discretion. Moderate-risk examinees are expected to commit violence more frequently than low-risk long-term parolees but less frequently than other parolees." His advanced age and generally low propensity for violence reduced his risk of violence.

A report prepared by D.C. Taylor for a March 2023 parole suitability hearing found evidence that Blajos's "addiction has continued. You were found unresponsive in 2019." He had impaired impulse control and continued to be reckless. The report found that factors mitigating current risks were outweighed by factors aggravating his current risk, and that he posed an unreasonable risk of danger, citing a comprehensive risk assessment prepared by Jon Michael May.

LaPorta opined in conclusion that Blajos was "marginally amenable to rehabilitation[;] however, based on the totality of factors," his chances of recidivism "are significantly reduced and he does not pose an unreasonable risk of danger to public safety."

B.    *Core Men's Needs Assessment*

A 2015 core men's v.4 needs assessment scaled him as "highly probable" for substance abuse but "unlikely" for criminal personality, anger, and educational and employment problems.

C.    *Hearing*

At the resentencing hearing, Blajos's counsel asked the trial court to strike the 1987 prior conviction under *Romero* and to resentence him to 18 years as a second striker. Defense counsel acknowledged that the three strikes law encompassed serious crimes as well as violent ones but noted that recent laws have made sentences less draconian. He therefore asked the trial court to consider that the current offense was not violent. Also, Blajos was 69 years old, which suggested a lower recidivism rate, and he used a walker due to a knee issue. The department gave Blajos the lowest possible C-S score, which indicates risk to institutional security. He had no rules violations for violence in

6

25 years.  Also, after his 2019 overdose, Blajos attended substance abuse classes.

In addressing the *Romero* motion, the trial court gave a lengthy review of Blajos's history.  The trial court first noted that Blajos was not sentenced under the three strikes law because he committed violence but because he committed serious felonies of the same type.  After reading everything, the trial court said "it came across" that Blajos's "career" was serial burglary.  "He was put away because he repeatedly went into the sanctity of the home of individuals and burglarized their homes and violated their privacy," which could result in a violent act.

The trial court found a connection between Blajos's heroin use, which began when he was 29 years old, and his first burglary conviction when he was 31 years old.  "So it kind of coincides with the fact that he's admitting that he started using heroin.  It's very clear to me that he still has a very serious substance abuse issue."  Blajos overdosed in 2019, yet when he went before the parole board he did not have a plan for his drug addiction.  He did start attending substance abuse classes after his overdose.  However, the trial court said that "there doesn't seem to be much change in him in the sense that what drove him" was substance abuse.  The trial court noted that LaPorta's report referenced a December 2019 parole board hearing at which Blajos said he began using heroin at 29, used meth in prison, drank alcohol, and had antisocial personality disorder.  Blajos had admitted that it was hard staying sober even in a structured environment.  His rules violations were mostly for possessing alcohol, three gallons at one point.  He also had ones for possessing a cellphone and stealing food, and possessing morphine in September 2019.  Blajos also kept getting beat up in

prison, which suggested to the trial court that Blajos might be stealing people's things.

Blajos minimized his prison behavior, describing it as "incredible" considering what other inmates did and as "not bad" for 17 years. In each of the probation reports, he denied committing the offense, and at his trial on the current offense, he denied committing the burglary. The trial court thus found that Blajos had never expressed remorse or accepted responsibility for his actions.

The trial court then reviewed reports about Blajos's risk for violence. One report said Blajos had risk factors for violent recidivism based on his long history of substance abuse, criminal behavior, longevity of his association with gangs, and his prison disciplinaries. He was a moderate risk for violence, with an elevated risk relative to other long term offenders and nonelevated relative to other parolees. A March 2023 report authored by D.C. Taylor said, " 'Factors mitigating current risk are outweighed by factors that aggravate your current risk. You will pose an unreasonable risk of danger based on comprehensive risk assessments authored by Jon Michael May.' "

The trial court found it clear that Blajos had made no efforts to rehabilitate himself during his 20 years of incarceration. All reports except LaPorta's indicated he was at risk of future violence. The court observed that although people think of safety as physical safety, "going into somebody's home poses a serious danger to others."

The trial court then reviewed Blajos's criminal history. His first burglary occurred in 1986. After serving two years in prison for that crime, he was released and then convicted in February 1990 of being under the influence of a controlled substance. His

next strike was for an offense committed in 1990, and he served seven years in prison. While on parole, he committed the August 2003 burglary.

The trial court found that while Blajos might be physically different—i.e., older and has a bad knee—"characterwise and prospectwise he's the same person that went into prison. And I do find that it would endanger public safety. It is not in the interest of justice to reduce his sentence at this time" and he "falls well within the three strikes law."

The trial court denied the *Romero* motion, struck the one-year and 2 five-year enhancements, and reimposed 25 years to life on count 1.

## DISCUSSION

Blajos contends that the trial court abused its discretion by denying his *Romero* motion at the resentencing hearing. As we now explain, we disagree.

At a resentencing hearing under section 1172.75, a trial court has authority to exercise its discretion under section 1385, subdivision (a), and *Romero* to strike a prior conviction and to reduce a sentence imposed under the three strikes law. (*People v. Rogers* (2025) 108 Cal.App.5th 340, 364.) The three strikes law is designed to increase the prison terms of repeat felons. (*Romero*, *supra*, 13 Cal.4th at p. 504; §§ 667, subds. (b)–(i), 1170.12.) Although its purpose is to punish recidivists more harshly, not all recidivists fall within the spirit of the law, and a trial court therefore may strike or dismiss a prior conviction in the furtherance of justice. (*People v. Avila* (2020) 57 Cal.App.5th 1134, 1140; § 1385, subd. (a).)

When considering whether to strike a prior conviction, the factors a court considers are whether, in light of the nature and

9

circumstances of the defendant's present felonies and prior serious and/or violent felony convictions, and the particulars of the defendant's background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though the defendant had not previously been convicted of one or more serious and/or violent felonies. (*People v. Williams* (1998) 17 Cal.4th 148, 161.)

We review a trial court's ruling on a *Romero* motion under the deferential abuse of discretion standard, which requires the defendant to show that the sentencing decision was irrational or arbitrary. (*People v. Carmony* (2004) 33 Cal.4th 367, 375, 378.) It is not enough that reasonable people disagree about whether to strike a prior conviction. (*Id.* at p. 378.) Rather, the three strikes law establishes a sentencing norm and carefully circumscribes a trial court's power to depart from this norm. (*Ibid.*) The "law creates a strong presumption that any sentence that conforms to these sentencing norms is both rational and proper." (*Ibid.*) Only extraordinary circumstances justify finding that a career criminal is outside the three strikes law. (*Ibid.*) Therefore, "the circumstances where no reasonable people could disagree that the criminal falls outside the spirit of the three strikes scheme must be even more extraordinary." (*Ibid.*)

Here, Blajos contends that the trial court abused its discretion in finding that he fell within the three strikes scheme because it failed to consider factors relevant to the nature and circumstances of his prior strikes. Specifically, he argues that the trial court did not consider the nonviolent nature of his prior strikes, the remoteness of his 1987 strike, that addiction influenced his criminal conduct, and his age. The record shows, however, that the trial court considered each of these factors.

10

First, the trial court expressly noted that Blajos's strikes were all nonviolent.  But the trial court then pointed out that the three strikes law also applies to serious convictions, like the burglaries Blajos committed.  The trial court observed that the nature of Blajos's strikes, going into people's homes and violating their privacy, could result in a violent act.  In further support of its finding that Blajos remained a danger to society, the trial court cited (1) a December 2019 risk assessment, which indicated that Blajos had moderate risk factors for violent recidivism based on his long history of substance abuse and criminal behavior and (2) a January 2023 risk assessment finding that Blajos had a moderate risk for violence and met criteria for antisocial personality disorder.  Thus, while there was other evidence that Blajos was a low risk for violence, namely, LaPorta's opinion, there was evidence to the contrary that the trial court was entitled to rely on.

Second, Blajos's 1987 strike conviction was remote.  However, the "remoteness of a prior conviction, 'by itself, cannot be the basis for dismissing a prior strike conviction.' " (*People v. Dowdy* (2024) 107 Cal.App.5th 1, 12; see § 667, subd. (c)(3) [length of time between prior serious felony conviction and current felony conviction shall not affect imposition of sentence].)  Older "strike convictions do not deserve judicial forgiveness unless the defendant has used them as a pivot point for reforming his ways." (*People v. Mayfield* (2020) 50 Cal.App.5th 1096, 1107.)

The trial court here found that Blajos's 1987 conviction did not serve as such a pivot point.  Instead, after serving two years in prison for that conviction, he served 90 days in jail for possession of a controlled substance in 1990.  He then was

11

convicted in February 1991 for burglary again and sentenced to seven years in prison. In February 1998, he was convicted of possessing a controlled substance and sentenced to five years in prison. Then, while on parole, he committed the August 2003 burglary. Thus, since Blajos committed his first burglary in 1987, he did not remain out of prison for any extended time or reform his ways.

Third, as to Blajos's failure to reform his ways, the trial court did connect his criminal behavior to substance abuse. Citing *People v. Avila, supra*, 57 Cal.App.5th 1134, Blajos thus argues that his substance abuse was a mitigating factor. In *Avila*, at page 1144, a different panel of this division observed that the defendant's history of drug abuse could be a factor mitigating in favor of granting a *Romero* motion. However, *Avila*, at page 1143, also did not disagree with the "general notion that defendant's drug problem may have little mitigating value where the problem is long-standing." Even where drug abuse may be the root cause of a defendant's criminality, a trial court may consider a defendant's failure to " 'root out' such destructive drug dependency." (*People v. Gaston* (1999) 74 Cal.App.4th 310, 322, overruled on other grounds by *People v. Dain* (2025) 18 Cal.5th 246.)

In contrast to the *Avila* defendant who had tried to address his drug addiction, Blajos did not address his substance abuse until 2013, when it appears he began to attend or tried to attend Narcotics Anonymous. Blajos then overdosed in 2019, after which he began attending an Alcoholics Anonymous Interactive Group and related classes. Although the record shows that Blajos made some effort to address his substance abuse, the evidence nonetheless supports the trial court's finding that

12

Blajos's efforts to rehabilitate have been erratic, late, and insufficient.  That is, even after he overdosed in 2019, he had a rules violation for possessing alcohol in prison in 2020.  He admitted at a December 2019 parole board hearing that he had trouble staying sober even in a structured environment.  Static risk assessments from 2022 and 2023 found his criminogenic needs factors were high for substance abuse.  And a risk assessment prepared for Blajos's 2023 parole board hearing found that while "his risk of violence is reduced by his advanced age and his generally low propensity for violence," he "presents with significant deficits related to his substance use disorders, understanding of his risk factors and his underdeveloped parole plans."  Thus, given that substance abuse drove Blajos's criminal behavior and his failure adequately to address his substance abuse, the trial court was within its discretion to find that Blajos presented a risk of recidivism.  (See, e.g., *People v. Carmony*, *supra*, 33 Cal.4th at p. 378 [that defendant had "done little to address his substance abuse problems" supported denying *Romero* motion]; *People v. Leavel* (2012) 203 Cal.App.4th 823, 837 [defendant's failure to obtain "treatment for his mental health and substance abuse problems that he claims led to the crimes" weighed against striking prior offense]; *People v. Martinez* (1999) 71 Cal.App.4th 1502, 1511 [drug addiction not necessarily a mitigating factor when defendant has a long-term problem and seems unwilling to pursue treatment].)

Finally, the trial court acknowledged that Blajos was then about 70 years old and had mobility issues.  While Blajos's age may be considered when ruling on a *Romero* motion, that he was no longer young was "not a reason for him to be deemed outside of the spirit of the mandatory Three Strikes sentencing scheme."

(*People v. Vasquez* (2021) 72 Cal.App.5th 374, 391.)  Here, the trial court found that notwithstanding Blajos's age, he was unchanged, "characterwise and prospectwise."  The record supports that finding.  Even LaPorta found it "evident" that Blajos had difficulty following rules and respecting authority.

Thus, based on the record, the trial court did not abuse its considerable discretion in finding that Blajos still falls within the spirit of the three strikes law and denying his *Romero* motion.

## DISPOSITION

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EDMON, P. J.

We concur:

EGERTON, J.

HANASONO, J.